EDMUND P. COADY AND VIRGINIA COADY, PETITIONERS, *v.* COMMIS-SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70734. Filed January 29, 1960.

*Carl H. Tangeman, Esq.*, for the petitioners.
*William O. Allen, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* This proceeding involves a deficiency in income tax for the taxable year 1954 in the amount of $16,875, and an addition thereto under section 294(d)(2) of the 1939 Code in the amount of $1,012.50.

The issue for decision is whether the transfer by the Christopher Construction Company of a portion of its assets to E. P. Coady and Co. in exchange for all of the Coady Company's stock, and the subsequent distribution by the Christopher Company of such Coady stock to petitioner in exchange for his Christopher stock, constituted a distribution of stock qualifying for tax-free treatment on the shareholder level under the provisions of section 355 of the 1954 Internal Revenue Code.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Edmund P. Coady (hereinafter referred to as the petitioner) and Virginia Coady, husband and wife and residents of Columbus, Ohio, filed their joint Federal income tax return for the taxable year 1954 with the district director of internal revenue at Columbus, Ohio.

Christopher Construction Co., an Ohio corporation, is now engaged, and for more than 5 years prior to November 15, 1954, was engaged, in the active conduct of a construction business primarily in and around Columbus, Ohio. In an average year the Christopher Company undertook approximately 6 construction contracts, no one of which lasted for more than 2 years. Its gross receipts varied between $1,500,000 and $2,000,000 per year.

At its central office, located at 16 East Broad Street in Columbus, the Christopher Company kept its books of account, paid its employees, prepared bids for its jobs, and, excepting minor amounts of tools and supplies, made its purchases. In addition, it maintained temporary field offices at each jobsite. It also maintained a central repair and storage depot for its equipment. Equipment in use on particular jobs was kept at the jobsite until work was terminated. Then, it would either be returned to the central depot or moved to another jobsite.

At all times material hereto, the stock of the Christopher Company was owned by M. Christopher and the petitioner. For a number of years, petitioner owned 35 per cent of that stock and Christopher owned 65 per cent. However, on April 19, 1954, petitioner purchased 15 per cent of the total stock from Christopher. From that date until November 15, 1954, each owned 50 per cent of the company's stock.

Sometime prior to November 15, 1954, differences arose between the petitioner and Christopher. As a result, they entered into an agreement for the division of the Christopher Company into two separate enterprises. Pursuant to that agreement, the Christopher Company, on November 15, 1954, organized E. P. Coady and Co., to which it transferred the following assets, approximating one-half the Christopher Company's total assets:

> A contract for the construction of a sewage disposal plant at Columbus, Ohio, dated June 1, 1954.
> A part of its equipment.
> A part of its cash, and certain other items.

In consideration for the receipt of these assets, E. P. Coady and Co. transferred all of its stock to the Christopher Company. The Christopher Company retained the following assets, which were of the same type as those transferred to E. P. Coady and Co.:

> A contract for a sewage treatment plant in Charleston, West Virginia.
> A part of its equipment.
> A part of its cash.

Immediately thereafter, the Christopher Company distributed to the petitioner all of the stock of E. P. Coady and Co. held by it in exchange for all of the stock of the Christopher Company held by petitioner. The fair market value of the stock of E. P. Coady and Co. received by petitioner was $140,000. His basis in the Christopher Company stock surrendered was $72,500.

Since the distribution, both E. P. Coady and Co. and the Christopher Company have been actively engaged in the construction business.

On their 1954 Federal income tax return, petitioner and his wife reported no gain or loss on the exchange of the Christopher Company stock for the stock of E. P. Coady and Co.

Respondent determined that petitioner realized a capital gain on that exchange in the amount of $67,500, 50 per cent of which was taxable in 1954.

Petitioner contends that the distribution to him of the E. P. Coady and Co. stock qualified for tax-free treatment under the provisions of section 355 of the 1954 Code,[1] arguing that it was

---

[1] SEC. 355. DISTRIBUTION OF STOCK AND SECURITIES OF A CONTROLLED CORPORATION.
  (a) EFFECT ON DISTRIBUTEES.—
    (1) GENERAL RULE.—If—
      (A) a corporation (referred to in this section as the "distributing corporation")—
        (i) distributes to a shareholder, with respect to its stock * * *

    *      *      *      *      *      *      *

solely stock * * * of a corporation (referred to in this section as "controlled corporation") which it controls immediately before the distribution,
      (B) the transaction was not used principally as a device for the distribution of

received pursuant to a distribution of a controlled corporation's stock within the meaning of that section.

Respondent on the other hand maintains petitioner's receipt of the Coady stock did not fall within those distributions favored by section 355, inasmuch as the 5-year active business requirements of 355(b) were not met. More particularly he argues that section 355 does not apply to the separation of a "single business"; and, inasmuch as the Christopher Company was engaged in only one trade or business (construction contracting), the gain realized by peti-

the earnings and profits of the distributing corporation or the controlled corporation or both * * *,

    (C) the requirements of subsection (b) (relating to active businesses) are satisfied, and

    (D) as part of the distribution, the distributing corporation distributes—

        (i) all of the stock and securities in the controlled corporation held by it immediately before the distribution, or

        (ii) an amount of stock in the controlled corporation constituting control within the meaning of section 368(c), and it is established to the satisfaction of the Secretary or his delegate that the retention by the distributing corporation of stock (or stock and securities) in the controlled corporation was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax,

then no gain or loss shall be recognized to (and no amount shall be includible in the income of) such shareholder * * * on receipt of such stock * * *

    (2) NON PRO RATA DISTRIBUTIONS, ETC.—Paragraph (1) shall be applied without regard to the following:

    (A) whether or not the distribution is pro rata with respect to all of the shareholders of the distributing corporation,

    (B) whether or not the shareholder surrenders stock in the distributing corporation, and

    (C) whether or not the distribution is in pursuance of a plan of reorganization (within the meaning of section 368 (a)(1)(D)).

    *       *       *       *       *       *       *

(b) REQUIREMENTS AS TO ACTIVE BUSINESS.—

    (1) IN GENERAL.—Subsection (a) shall apply only if either—

    (A) the distributing corporation, and the controlled corporation (or, if stock of more than one controlled corporation is distributed, each of such corporations), is engaged immediately after the distribution in the active conduct of a trade or business, or

    (B) immediately before the distribution, the distributing corporation had no assets other than stock or securities in the controlled corporations and each of the controlled corporations is engaged immediately after the distribution in the active conduct of a trade or business.

    (2) DEFINITION.—For purposes of paragraph (1), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if—

    (A) it is engaged in the active conduct of a trade or business, or substantially all of its assets consist of stock and securities of a corporation controlled by it (immediately after the distribution) which is so engaged,

    (B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution,

    (C) such trade or business was not acquired within the period described in subparagraph (B) in a transaction in which gain or loss was recognized in whole or in part, and

    (D) control of a corporation which (at the time of acquisition of control) was conducting such trade or business—

        (i) was not acquired directly (or through one or more corporations) by another corporation within the period described in subparagraph (B), or

        (ii) was so acquired by another corporation within such period, but such control was so acquired only by reason of transactions in which gain or loss was not recognized in whole or in part, or only by reason of such transactions combined with acquisitions before the beginning of such period.

tioner upon receipt of the Coady stock was taxable. As authority for his position respondent points to that portion of his regulations which expressly provides that section 355 does not apply to the division of a single business.[2]

Conceding that the Christopher Company was engaged in a "single business" immediately prior to the instant transaction, petitioner contends that the regulations, insofar as they limit the applicability of section 355 to divisions of only those corporations which have conducted two or more separate and distinct businesses for a 5-year period, are without support in the law, are without justification, are unreasonable and arbitrary, and therefore are invalid.

Thus, the issue is narrowed to the question of whether the challenged portion of the regulations constitutes a valid construction of the statute, or whether it is unreasonable and plainly inconsistent therewith. Though this appears to be a case of first impression, the question has not gone without comment.[3]

Section 355 of the 1954 Code represents the latest of a series of legislative enactments designed to deal with the tax effect upon shareholders of various corporate separations. Where the 1939 Code contained three sections, 112(b)(3), 112(b)(11), and 112(g)(1)(D), which controlled the tax impact of these exchanges, present law groups the statutory requirements into two sections, 355 and 368(c). A careful reading of section 355, as well as the Finance Committee report[4] which accompanied its enactment, reveals no language, express or implied, denying tax-free treatment at the shareholder level to a transaction, otherwise qualifying under section 355, on the grounds that it represents the division or separation of a "single" trade or business.

In general, section 355(a) prescribes the form in which a qualifying transaction must be cast, providing that a divisive distribution will not give rise to taxable gain or loss if: (1) The distributing corporation distributes stock or securities of a corporation of

---

[2] Income Tax Regulations.

Sec. 1.355-1. DISTRIBUTION OF STOCK AND SECURITIES OF CONTROLLED CORPORATION.— (a) *Application of section.* Section 355 provides for the separation, without recognition of gain or loss to the shareholders and security holders, *of two or more* existing businesses formerly operated, directly or indirectly, by a single corporation. It applies only to the separation of existing businesses which have been in active operation for at least five years, and which, in general, have been owned for at least five years by the corporation making the distribution of stock or of stock and securities. *Section 355 does not apply to the division of a single business.* * * * [Emphasis supplied.]

[3] See: Young, "Corporate Separations: Some Revenue Rulings Under Section 355," 71 Harv. L. Rev. 843, 850–853 (1958); Mintz, "Corporate Separations," 36 Taxes 882, 885–886 (1958); Brodsky, "Corporate Separations," N.Y.U. 16th Inst. on Fed. Tax. 393, 397–403 (1958); Note, "Divisive Reorganizations," 67 Yale L. J. 38, 44–50 (1957); Dean, "Spin-Offs," N.Y.U. 15th Inst. on Fed. Tax. 571, 576–578 (1957); Lyons, "Some Problems in Corporate Separations Under the 1954 Code," 12 Tax L. Rev. 15 (1957); Friedman, "Divisive Corporate Reorganizations Under the 1954 Code," 10 Tax L. Rev. 487, 493 (1955).

[4] S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), pp. 50–51.

which it has, immediately prior to the distribution, 80 per cent control as defined in section 368(c); (2) the distribution is not principally a device for distributing earnings and profits of either the distributing or controlled corporations; (3) the 5-year active business requirements of 355(b) are satisfied; and (4) the distributing corporation distributes either all its stock and securities in the controlled corporation, or so much thereof as constitutes control, as defined in 368(c), and retention of the balance is shown not to be in pursuance of a plan having as one of its principal purposes tax avoidance. The distribution itself must be either to a shareholder with respect to its stock, or a security holder with respect to its securities. With respect to a distribution of stock, the distribution need not be on a pro rata basis; the shareholder need not surrender stock in the distributing corporation; and the distribution need not have been made in pursuance of a plan of reorganization. However, subsection (a) contains no language which would require that the distributing corporation be engaged in more than one trade or business prior to the distribution.

The active business requirements of 355(b)(1) prohibit the tax-free separation of a corporation into active and inactive entities. Section 355(b)(1)(A) extends the provisions of 355(a) only to those divisive distributions where the distributing corporation and the controlled corporation are engaged immediately after the distribution in the active conduct of a trade or business. In the case of those distributions which involve liquidation of the transferor, 355(b)(1)(B) requires that immediately before the distribution the transferor have no assets other than stock or securities in the controlled corporations, and that immediately thereafter each of the controlled corporations is engaged in the active conduct of a trade or business. Neither 355(b)(1)(A) nor (B) concerns itself with the existence of a plurality of businesses per se; rather both speak in terms of a plurality of corporate entities engaged in the active conduct of *a* trade or business, a distinction we believe to be vital in light of provisions of 355(b)(2).

Section 355(b)(2) details the rules for determining whether a corporation is engaged in the active conduct of a trade or business, and provides that a corporation shall be treated as so engaged, if, and only if: (1) It is engaged in the active conduct of a trade or business, or substantially all its assets consist of stock and securities of a corporation controlled by it immediately after the distribution which is so engaged; (2) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution; (3) such trade or business was not acquired within that 5-year period in a transaction in which gain or loss was recog-

nized; and (4) control of a corporation, which at the time of acquisition of control was conducting such trade or business, was not acquired within that 5-year period, or, if acquired within that period, was acquired by reason of a transaction in which no gain or loss was recognized, or by reason of such transactions combined with acquisitions made before the beginning of that 5-year period. Again we note the statute avoids the use of the plural when referring to "trade or business," but rather provides that: "[A] corporation shall be treated as engaged in the active conduct of *a* trade or business if and only if * * * it is engaged in the active conduct of *a* trade or business * * * [and] such trade or business has been actively conducted through the 5-year period ending on the date of the distribution." (Emphasis supplied.)

Respondent maintains that a reading of 355(b)(2)(B) in conjunction with the requirement of 355(b)(1) that both "the distributing corporation, *and* the controlled corporation * * *, [be] engaged immediately after the distribution in the active conduct of a trade or business" (emphasis supplied) indicates Congress intended the provisions of the statute to apply only where, immediately after the distribution, there exist two separate and distinct businesses, one operated by the distributing corporation and one operated by the controlled corporation, both of which were actively conducted for the 5-year period immediately preceding the distribution. In our judgment the statute does not support this construction.

As noted, the only reference to plurality appears in section 355 (b)(1), and deals with corporate entities, not businesses. Recognizing the divisive nature of the transaction, subsection (b)(1) contemplates that where there was only one corporate entity prior to the various transfers, immediately subsequent thereto, there will be two or more *corporations*. In order to insure that a tax-free separation will involve the separation only of those assets attributable to the carrying on of an active trade or business, and further to prevent the tax-free division of an active corporation into active and inactive entities, (b)(1) further provides that each of the surviving corporations must be engaged in the active conduct of *a* trade or business.

A careful reading of the definition of the active conduct of a trade or business contained in subsection (b)(2) indicates that its function is also to prevent the tax-free separation of *active* and *inactive* assets into *active* and *inactive* corporate entities. This is apparent from the use of the adjective "such," meaning beforementioned, to modify "trade or business" in subsection (b)(2)(B), thus providing that the trade or business, required by (b)(2)(B)

to have had a 5-year active history prior to the distribution, is the same trade or business which (b)(2)(A) requires to be actively conducted immediately after the distribution. Nowhere in (b)(2) do we find, as respondent suggests we should, language denying the benefits of section 355 to the division of a single trade or business.

Nor can respondent derive support for his position by reading subsections (b)(1) and (b)(2) together, inasmuch as the plurality resulting therefrom is occasioned, not by any requirement that there be a multiplicity of businesses, but rather by the divisive nature of the transaction itself: i.e., one corporation becoming two or more corporations. Moreover, from the fact that the statute requires, immediately after the distribution, that the surviving corporations each be engaged in the conduct of a trade or business with an active 5-year history, we do not think it inevitably follows that each such trade or business necessarily must have been conducted on an individual basis throughout that 5-year period. As long as the trade or business which has been divided has been actively conducted for 5 years preceding the distribution, and the resulting businesses (each of which in this case, happens to be half of the original whole) are actively conducted after the division, we are of the opinion that the active business requirements of the statute have been complied with.

Respondent argues his construction of section 355 is confirmed by the report of the Senate Committee on Finance which accompanied the 1954 Internal Revenue Code.[5] He refers us to that portion of the report which provides:

Present law contemplates that a tax-free separation shall involve only the separation of assets attributable to the carrying on of an active business. Under the House bill, it is immaterial whether the assets are those used in an active business but if investment assets, for example, are separated into a new corporation, any amount received in respect of such an inactive corporation, whether by a distribution from it or by a sale of its stock, would be treated as ordinary income for a period of 10 years from the date of its creation. Your committee returns to existing law in not permitting the tax free separation of an existing corporation into active and inactive entities. It is not believed that the business need for this kind of transaction is sufficiently great to permit a person in a position to afford a 10-year delay in receiving income to do so at capital gain rather than dividend rates. Your committee requires that *both* the business retained by the distributing company and the business of the corporation the stock of which is distributed must have been actively conducted for the 5 years preceding the distribution, a safeguard against avoidance not contained in existing law. [Emphasis supplied.]

He argues that use of the term "both," with reference to the business retained by the distributing corporation and that operated by the controlled corporation, indicates that Congress intended there be

---

[5] Footnote 4, *supra.*

in operation and existence during the 5 years preceding the distribution two or more separate and distinct businesses. We do not agree.

A reading of the quoted section of the report in its entirety reveals that the committee was addressing itself to the nature and the use of the particular assets which were transferred (active v. inactive), rather than to any distinction between one or more businesses This is obvious when the entire paragraph is considered in the light of its topic sentence. The committee notes that under present law only assets attributable to the carrying on of an active trade or business may be separated tax free. After acknowledging a departure from this requirement in the House bill, the committee disapproves of the position taken by the House, and indicates it is returning to existing law by not permitting the tax-free separation of a corporation into active and inactive entities, and strengthens this provision by requiring that *both* the business retained by the distributing corporation and that of the controlled corporation must have been actively conducted for 5 years preceding the distribution. The excerpt makes no mention of trades or businesses per se.

Respondent next argues the regulations upon which he relies are entitled to additional stature due to the fact that the Technical Amendments Act of 1958 (72 Stat. 160), which was intended to eliminate unintended benefits and hardships contained in the 1954 Code, was enacted subsequent to their promulgation, and, while making extensive changes in many sections of the statute, made no change in section 355. He relies upon the rule which attributes congressional approval to long-standing regulations under a section of the Internal Revenue Code where the section has been often amended without a revision of its administrative interpretation. See *Lykes* v. *United States*, 343 U.S. 118 (1952), rehearing denied 343 U.S. 937 (1952).

We note that the final regulations under subchapter C of the 1954 Code became effective on December 2, 1955, and that the Technical Amendments Act of 1958 was enacted on September 2, 1958. Further we note that section 355 has not been amended since its enactment in August of 1954. Thus, it is apparent that the challenged regulations have neither the longevity nor the congressional approval alluded to in *Lykes* v. *United States, supra.*

There being no language, either in the statute or committee report, which denies tax-free treatment under section 355 to a transaction solely on the grounds that it represents an attempt to divide a single trade or business, the Commissioner's regulations which impose such a restriction are invalid, and cannot be sustained. *Commissioner* v. *Acker*, 361 U.S. 87 (1959).

Finally, respondent argues that there is presently pending in Congress legislation (H.R. 4459) which would revise section 355(a)(1)(B) so as to permit a nontaxable distribution if either: (1) The active business requirements of 355(b) are met; or (2) it is established to the satisfaction of the Secretary or his delegate that the distribution is not made for the purpose of avoiding tax. As interpretative of this pending legislation, respondent directs our attention to a report dated December 11, 1958, of The Advisory Group on Subchapter C of the Internal Revenue Code of 1954, appointed by the House Subcommittee on Internal Revenue Taxation, wherein it is stated at page 65:

> It is further provided in section 355(a)(1)(B)(ii) of the proposed revision that even though the transaction does not otherwise qualify under section 355 because of failure to satisfy the active business requirements or the 20 percent distribution requirement, it will nevertheless qualify under section 355 if it is established to the satisfaction of the Secretary or his delegate that the distribution is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax. *For example, even if the controlled corporation and the distributing corporation are not engaged in separate businesses, the Secretary or his delegate might find that a division of a single business qualifies under section 355, particularly where after the division certain stockholders will own stock in only one of the corporations and the remaining stockholders will own only stock in the other corporation.* Permitting some latitude in administration of the section should serve to prevent a rigid interpretation of the requirements of clause (i). [Emphasis supplied.]

Relying on the italicized language, respondent argues that under the law as presently written, the division of a single trade or business does not qualify for tax-free treatment under section 355.

The short answer to this argument is that *pending* legislation in no way is binding on this Court. Until enacted, H. R. 4459 represents a course of action Congress may or may not take. Moreover, the cited report was not prepared by any congressional committee, but rather by an advisory group appointed to assist in a study of subchapter C of the 1954 Code. Quite possibly, the proposed revision of section 355 was occasioned by the restrictive nature of the Commissioner's regulations, rather than by any interpretation of the nature of existing law. In any event, respondent's reliance upon either the bill or the report as indicative of existing law is misplaced.

Inasmuch as the parties treat the distribution as otherwise qualifying under section 355 for tax-free treatment, and inasmuch as we have found that portion of the regulations denying application of section 355 to the division of a single business to be invalid, we conclude that petitioner properly treated the distribution to him of the stock of E. P. Coady and Co. as a nontaxable transaction.

No evidence having been introduced with respect to the addition to tax under section 294(d)(2) of the 1939 Code, it is sustained subject to our holding on the above issue.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

PIERCE, J., dissents.

_____

HARRON, J., dissenting: The petitioner claims that no gain is to be recognized from the distribution of all of the Coady corporation stock in exchange for all of his Christopher corporation stock. In order to obtain such tax-free treatment of the exchange, he relies upon the provisions of section 355 of the 1954 Code. The provisions of section 355 provide exceptions to the rule recognizing gain or loss. In considering whether the transaction in dispute is entitled to the nonrecognition provisions of section 355, we must inquire whether the transaction before us is the kind of transaction that Congress intended to relieve of tax. Cf. *Commissioner* v. *Gregory*, 69 F. 2d 809, affd. 293 U.S. 465; and *Bazley* v. *Commissioner*, 331 U.S. 737.

The question whether the Congress intended that section 355 should apply to the kind of transaction involved here is of particular importance in this case because of the evident desire of the petitioner to narrow the issue to the question of whether section 355 applies to the division of a "single business," i.e., whether section 355 applies to the division of a corporation which carried on a single business. Such narrow approach then leads to a related question, whether the Commissioner's regulations are invalid, the point of reference being the statement in section 1.355–1 of the regulations that "[s]ection 355 does not apply to the division of a single business." It is, in my opinion, not advisable to restrict the consideration of whether the petitioner did not realize taxable gain from the transaction to the suggested, confined proposition. Rather, I believe the inquiry should be directed first to the transaction and to all of the surrounding facts and circumstances. This approach is made difficult because the parties themselves have seen fit to adopt a narrow ground. But since this is a case of first impression, and since an issue is raised relating to the validity of the regulations, it is incumbent upon us to carefully examine all of the facts and circumstances so as to determine whether the disputed transaction meets the intendment of section 355, not whether the respondent's efforts in his regulations to state a logical inference from the statutory provisions in general terms, which is a difficult matter, is or is not correct. I believe that a wrong conclusion is reached because of acceptance without question of the narrow and, I think, incorrect postulate upon which the petitioner's argument is based.

*The Problem of Construction of Section 355(b).*

Section 355 requires that two tests shall be met to obtain tax-free treatment: (1) The transaction must not be "principally * * * a device for the distribution of the earnings and profits of the distributing corporation." (2) The transaction must satisfy "the requirements of subsection (b) (relating to *active businesses*)." (Emphasis added.) Subsection (b) states the requirements as to "active businesses." It is required by (b)(1)(A) that subsection (a) shall apply only if the distributing corporation, and the controlled corporation, are engaged immediately after the distribution "in the active conduct of a trade or business." That is to say, immediately after the distribution, *both* the distributing corporation and the controlled corporation must be engaged in the active conduct of a trade or business. The punctuation of (b)(1)(A) has meaning. The words, "and the controlled corporation" are set off by commas; the verb, "is engaged," has two singular subjects, "the distributing corporation," and "the controlled corporation." The statute then defines the phrase "active conduct of a trade or business" (subsec. (b)(2)). The definition specifies that the trade or business which is actively conducted immediately after the distribution (referred to in subsection (a) and subsection (b)(1)) must be a trade or business which has been actively conducted throughout a 5-year period ending on the date of distribution. I believe there can be no doubt that since it is required by subsection (b)(1)(A) that *both* the distributing corporation and the controlled corporation must be engaged immediately after the distribution in the active conduct of a trade or business, the meaning of subsection (b)(2)(B) is that *both* the distributing corporation and the controlled corporation must actively conduct a business, respectively, which had been conducted for 5 years prior to the date of the distribution; each corporation must carry on a business after the distribution which had been carried on for 5 years before the distribution. I disagree with the conclusion that the statute does not so require.

It seems to me that the view adopted here involves an inconsistency in the construction of the statute because it admits that subsection (b) requires that the business actively conducted after the distribution must "have had a 5-year active history prior to the distribution." It is difficult to understand the process by which it is concluded that although section 355 requires that the business of the distributing corporation must have been actively carried on for 5 years prior to the distribution, it does not require that the business of the controlled corporation carried on after the distribution must have been actively carried on for 5 years prior to the distribution.

However, the error in the construction of subsection (b) can be identified, as is shown hereinafter.

I think that it only begs the question in this case, and does not squarely deal with the facts, to say, as the majority does, that "section 355 * * * reveals no language, express or implied, denying tax-free treatment at the shareholder level to a transaction * * * on the grounds that it represents the division or separation of a 'single' trade or business." Furthermore, I strongly disagree with the view that the purpose of the active business requirements of section 355 (b) (1) is limited to the prohibition of a tax-free separation of a corporation into active and inactive entities, and to the prevention of "the tax-free separation of *active* and *inactive* assets into *active* and *inactive* corporate entities." Of course, such results are not allowed by section 355, but that kind of separation is not involved here and the point is not relevant to the issue in this case.

The error which I believe is made here in the construction of subsection (b) of section 355 is found in the failure to agree that the definition of the phrase "active conduct of a trade or business" contained in (b) (2) has reference to "a corporation"; that by reference to (b) (1), "a corporation" must refer to both the distributing corporation and the controlled corporation; and that the first sentence of (b) (2) deals with "a corporation" as a matter of convenience in drafting the definition so as not to engage in repetitions of the words "the distributing corporation" and "the controlled corporation." In this context, I think it is entirely clear that the word "such" in (b) (2) (B) refers back to the active conduct of a trade or business by "a corporation," be the corporation either the distributing corporation or the controlled corporation. For the purpose of (b) (1), "a corporation" is either the distributing corporation or the controlled corporation; *both* "shall be treated as engaged in the active conduct of a trade or business [for the purpose of (b) (1)] if and only if * * * (B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution." See 3 Mertens, Law of Federal Income Taxation, par. 20.103, ch. 20, p. 449, where the following is stated:

> The distributing corporation and the controlled corporation * * * must have been engaged in "the active conduct of a trade or business" for at least a five-year period ending on the date of distribution of the stock or securities of the controlled corporation, and they must be so engaged immediately after the distribution. These requirements apply whether the controlled corporation is formed as part of the divisive transaction, or whether it is a pre-existing subsidiary. * * *

The above statement in Mertens cites as its authority section 355 (b) (1) (A) and (b) (2) (B); it does not rely upon section 1.355–1(a) of the Commissioner's regulations.

The above construction of section 355(b) finds support in the report of the Senate Committee on Finance, S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 51 (quoted in the Opinion), where it is stated:

Your committee requires that both the business retained by the distributing company and the business of the corporation the stock of which is distributed must have been actively conducted for the 5 years preceding the distribution, a safeguard against avoidance not contained in existing law.

I do not understand that the statements in the report of the Finance Committee which precede the above sentence detract at all from the meaning of the above quotation which gives a clear statement of the intention of the Congress in enacting section 355 of the 1954 Code, which is an entirely different provision than appeared in the original bill introduced in the House of Representatives, H.R. 8300, as section 353 which was deleted in toto when the Committee on Finance reported amendments to the bill. In the report of the Committee on Finance, *supra*, that which preceded the above-quoted sentence, starting on page 50 of the report, referred to proposed section 353 in the House bill which was eventually deleted entirely, whereas the above-quoted sentence refers to section 355 which was substituted for proposed section 353.

### The Facts and Circumstances in This Case.

Although the parties have limited the issue to the question whether the requirements of subsection (b) of section 355 "(relating to active businesses)" are satisfied, it is necessary to give consideration to additional facts which are included in the stipulation of facts. One reason for this is that the distributing corporation, Christopher, had assets other than the stock of the controlled corporation, Coady. Another reason is that to refer to the business of Christopher simply as a "construction business" is to overlook the implicit facts that an individual construction contract represents a unit of business activity which is carried on independently of other individual construction contracts, that ordinarily accounting records must be kept for an individual construction contract, and that an individual construction contract yields gross and net income after expenses incident thereto. It is an oversimplification to describe the business which Christopher had conducted during 5 years prior to the distribution involved here in such general terms as a "construction business." Furthermore, it is admitted by the petitioner that performance under any construction contract of Christopher did not last for more than 2 years. At the outset, therefore, the facts in this case make it one

which very well may not come within the scope and intendment of section 355(b). At the least, the question here is difficult.

The fair market value of the stock of Coady and Co. received by petitioner was $140,000, which value is explained by the values of assets which were transferred from Christopher Company to Coady and Co. on November 14, 1954, as follows:

| | |
|---|---|
| 1. Cash from Christopher Co. (out of accumulated earnings) | $50,072.04 |
| 2. Share of profits in Columbus contract | 27,342.39 |
| 3. Insurance, life of E. P. Coady | 10,418.99 |
| 4. Account receivable owed by E. P. Coady | 722.99 |
| 5. Miscellaneous cash items of expense | 677.50 |
| Subtotal | 89,233.91 |
| 6. Capital account of Christopher in Columbus contract | 20,000.00 |
| 7. Account receivable of Christopher in Columbus contract | 22,919.89 |
| 8. Construction equipment | 8,373.70 |
| Total | 140,527.50 |

Included in the assets of Christopher which were transferred to the Coady corporation were $50,072.04 in cash out of the accumulated earnings of Christopher; profits from a construction contract dated June 1, 1954, with the City of Columbus, Ohio, in the amount of $27,342.39; an account receivable owed by E. P. Coady of $722.99; miscellaneous cash items of $677.50, which apparently were to reimburse E. P. Coady for traveling expenses; and an insurance policy on the life of E. P. Coady valued at $10,418.99. These items total $89,233.91. Whether or not the transfer of the above items involved a distribution of earnings and profits of the Christopher Company is not a question before us. Nevertheless, reference is made to these facts in connection with consideration of the business actively carried on by the controlled corporation, Coady.

Christopher also transferred to the controlled corporation various items of equipment having a total value of $8,373.70. It appears that such equipment could be used in construction work.

After Coady was organized, it carried on work under the contract of June 1, 1954, for the construction of a sewage disposal plant for the City of Columbus. Such business was the only business actively conducted by the Coady corporation with which the Christopher corporation had had any connection. Christopher had had an interest in that contract as a joint venturer with another firm, and work under the contract had started on July 1, 1954. Christopher's capital account in the joint venture contract was $20,000, and in connection therewith it held an account receivable, as of November 15, 1954, in the amount of $22,919.89. Also, there had accrued to Chris-

topher under the contract a share in profits in the amount of $27,342.39. Under the considerations ordinarily given to such transaction as is here involved, it would be said that Christopher assigned to the Coady corporation all of its interest in the construction contract with Columbus, plus other assets, in exchange for all of the stock of Coady, and that Coady, in the place of Christopher, continued Christopher's participation in the contract.

Under these facts, I am unable to conclude that the requirements of subsection (b) of section 355 were satisfied. Coady, the controlled corporation, carried on a business after November 15, 1954, which included a particular group of activities carried on for the purpose of earning income, but those particular activities related to a particular contract dated June 1, 1954. Clearly, the business carried on by Coady after it was organized and received assets from Christopher was not a business which had been "actively conducted throughout the 5-year period ending on the date of the distribution."

It seems to be clear that the Coady corporation, a new corporation, carried on a new venture and a new business, and that the transaction involving the distribution of the stock of the Coady corporation does not meet the requirements of section 355(b), and does not come within the intendment of section 355. Accordingly, the distribution to the petitioner of the stock of Coady corporation should not be held to be one with respect to which no gain shall be recognized. The Coady corporation was not a "controlled corporation" within the scope of section 355. Furthermore, the regulations are not invalid. From the conclusions reached here to the contrary, I respectfully dissent.

---

ATKINS, *J.*, dissenting: I think the majority opinion errs in holding that section 1.355-1 of the Income Tax Regulations under the Internal Revenue Code of 1954 is invalid in providing that section 355 does not apply to the division of a single business.

The Supreme Court has many times held that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes, and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496. It has also been stated by the Supreme Court that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. *Brewster* v. *Gage*, 280 U.S. 327, and cases therein cited.

Section 355 is not clear. It might be susceptible to different interpretations. However, it seems that the interpretation adopted in the regulations is not unreasonable and plainly inconsistent with the statute, specifically section 355(b)(2)(B). This is particularly true if the legislative history of the statutory provision is taken into consideration. See section 353 of the House bill (H.R. 8300), which required that a corporation would be treated as an "inactive corporation" unless separate books and records had been maintained for the business transferred to it. This clearly contemplated the separation of distinct businesses. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A124. The law as finally adopted did not incorporate this particular requirement that separate books should be kept, but in S. Rept. No. 1622, 83d Cong., 2d Sess., p. 50, it is stated that the changes made by the Senate in existing law correspond substantially to those made in the House bill and, as shown in the quotation from the Senate report, contained in the majority opinion, it was the intention that "both the business retained by the distributing company and the business of the corporation the stock of which is distributed must have been actively conducted for the 5 years preceding the distribution, a safeguard against avoidance not contained in existing law."

Section 1.355–1(c) of the regulations defines a trade or business as follows:

for purposes of section 355, a trade or business consists of a specific existing group of activities being carried on for the purpose of earning income or profit from only such group of activities, and the activities included in such group must include every operation which forms a part of, or a step in, the process of earning income or profit from such group. Such group of activities ordinarily must include the collection of income and the payment of expenses. It does not include—

\* \* \* \* \* \* \*

(3) A group of activities which, while a part of a business operated for profit, are not themselves independently producing income even though such activities would produce income with the addition of other activities or with large increases in activities previously incidental or insubstantial.

Sixteen examples are set forth in the regulations to illustrate these provisions.

It seems clear that the activities of the Christopher Construction Company cannot be considered as the carrying on of anything but a single business, and hence it cannot be considered that the business carried on by the Coady Company immediately after the date of distribution had been actively conducted over a 5-year period prior to the distribution, within the meaning of section 355(b)(2)(B) of the Code.

TURNER, HARRON, OPPER, and TRAIN, *JJ.*, agree with this dissent.