UNITED STATES of America,
Appellant,

v.

W. W. MARETT and Ruth Marett et al.,
Appellees.

No. 20322.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1963.

Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Loring W. Post, Harry Baum, Edward S. Smith, Attys., Dept. of Justice, Washington, D. C., for appellant.

Francis Shackleford, James E. Thomas, Arnold C. Moore, Alston, Miller & Gaines, Atlanta, Ga., for appellees.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

TUTTLE, Chief Judge.

The United States appeals from a judgment in favor of the taxpayer for a refund of taxes illegally collected. The facts having all been stipulated, and thus not being in dispute, the sole question is whether the "spin off" 'of part of the activities previously carried on by Famous Foods, Inc. by the organization of a new corporation, Sunny South, and the distribution of the stock of Sunny South by Famous Foods to its stockholders was tax free within Section 355 of the 1954 Internal Revenue Code.[1]

The material facts as stipulated and found by the District Court may be summarized as follows:

Famous Foods, Inc. entered the business of processing and packaging foods at 1121 Pryor Road, Atlanta, Georgia, in April, 1945.

Famous Foods' principal produce has been fried pork skins but it has also

---

1. Although the text of the statute is complicated, it need be only said that it provides that the transaction shall be tax free only (for the purpose of this case) if "(A) [T]he distributing corporation, and the controlled corporation * * * is engaged immediately after the distribution in the active conduct of a trade or business," and to be considered as being engaged in the active conduct of a trade or business, it must appear that "(B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution."

produced potato chips, corn chips and other related products. Since it entered business, Famous Foods packaged under its own name and also packaged for others under whatever brand was designated. In 1948, at the Pryor Road location, Famous Foods began producing and packaging for Tom Huston Peanut Company (hereinafter sometimes referred to as Tom's) under the brand name of "Tom's." Production and packaging for Tom's consisted primarily of pork skins, but Famous Foods also produced and packaged some corn, cheese and potato chips for Tom's. Famous Foods also continued to produce and package for others at that plant.

In 1948 Famous Foods acquired a plant in Fort Worth, Texas, which thereafter produced pork skins and other products exclusively for Tom Huston. Most of the purchasing of raw materials for manufacturing pork skins and other products at this plant was done by personnel at the Fort Worth plant. Mr. Donald R. Marett managed the Fort Worth operation with very little supervision by Famous Foods' president who was located in Atlanta. Orders from Tom Huston distributors supplied by the Fort Worth plant were sent directly by the distributors to Fort Worth. The general accounting records for all plants were kept in the Atlanta office.

From 1948 to February 1954 Famous Foods operated under the following business practices:

(a) All of its products, whether intended for Tom's or another customer, were prepared by the same production process; there were no separate cooking operations; and when a batch of skins was cooked, orders were filled as needed.

(b) The same personnel equipment and machinery were used for producing and processing orders for all customers, including Tom Huston, in the Atlanta plant. However, the Fort Worth plant was devoted exclusively to production for Tom Huston.

(c) Raw materials were purchased by Famous Foods without regard to the customers' product which would be pro-

duced from the raw materials. There were no separate purchases for Tom's; and there was no separation of inventory in the Atlanta plant. There was a separate inventory in the Fort Worth plant used exclusively in connection with supplying Tom Huston.

(d) There was no distinction, except in packaging, between products sold to Tom's and products sold to other customers.

(e) Mr. Marett, President of Famous Foods, serviced the Tom Huston account himself under the terms of an exclusive contract dated August 30, 1948, a copy of which is attached to the stipulation of facts as Exhibit 1. A separate salesman was employed to solicit all customers other than Tom Huston and devoted his activities entirely to such solicitation.

In February 1954, Famous Foods opened a new plant at 906 Adamson Street, Atlanta, Georgia. The plant was opened in order to eliminate errors in packaging whereby packages under the Famous Foods label had been packed with products intended for Tom's. After February 1954 the orders of all customers except Tom Huston were processed and packaged at the new Adamson Street plant while the Pryor Road plant was devoted to products intended for Tom Huston.

Tom Huston purchased about seventy-five per cent of Famous Foods' products and the remaining twenty-five per cent was sold to independent retailers in competition wth Tom Huston.

Merchandise sold under the name "Famous Foods" was often placed on the customers' shelves in competition with pork skins sold to Tom Huston by Famous Foods and marketed under the name of "Tom Huston." In order for Famous Foods to maintain its relationship with Tom Huston, it was necessary to produce and market this additional production of pork skins through a separately organized company so as to meet the objections of Tom Huston and preserve it as a customer. On October 1, 1954, Famous Foods transferred all assets at the Adamson Street plant plus

all accounts receivable, except Tom's, to a newly organized corporation (the Sunny South Company) in exchange for 1,-008 shares of its stock, being all the outstanding stock of the Sunny South Company. No liabilities of Famous Foods were assumed by Sunny South.

On October 4, 1954, Famous Foods distributed the stock of Sunny South Company to its stockholders, proportionately.

All three plants (the two remaining as assets of Famous Foods, and the Adamson Street, Atlanta, plant transferred to Sunny South Company) continued to produce and market pork skins. The two remaining Famous Foods plants sold pork skins exclusively to Tom Huston. Sunny South with its Adamson Street plant, sold pork skins to the trade generally under the label "Sunny South."

Upon stipulating the facts the taxpayers moved the trial court for a summary judgment. The court found specifically that prior to October 1, 1954, Famous Foods operated only a single business. The Internal Revenue Service held that in view of this fact, Section 355 did not apply. In support of its position, the Government cited 1.355–1(a) of Treasury Regulations on Income Tax (1954 Code) as follows:

"SEC. 1.355–1. Distribution of stock and securities of controlled corporation.—(a) Application of section. Section 355 provides for the separation, without recognition of gain or loss to the shareholders and security holders, of two or more existing businesses formerly operated, directly or indirectly, by a single corporation. It applies only to the separation of existing businesses which have been in active operation for at least five years, and which, in general, have been owned for at least five years by the corporation making the distribution of stock or of stock and securities. Section 355 does not apply to the division of a single business * * *"

The trial court, finding the facts sufficiently similar, followed the decision of the Tax Court in Coady v. Commissioner, 33 T.C. 771, aff'd 289 F.2d 490 (6 Cir.), and granted the motion for summary judgment.

We affirm the judgment of the trial court.

In order for the benefits of Section 355 to apply here, it must appear that the activities regularly carried on by Sunny South, the new corporation, have "been actively conducted throughout the five year period" prior to its organization (the date of the distribution of its stock to the stockholders). There is no dispute that the packing and sale of the products by Sunny South had been carried on previously for more than five years by Famous Foods, Inc. The United States contends, however, that in order to qualify it must appear that the trade or business of the new corporation must have been actively conducted throughout the five year period as a separate business of the parent corporation. This, it seems to us, is more than an attempt to put a "gloss" on the statutory requirement. It is an attempt to add a restriction to the statute which is not there. The effect of such an effort by the Government would come within the condemnation of the decisions of the Supreme Court, exemplified by Commissioner of Internal Revenue v. Acker, 361 U.S. 87, at page 92, 80 S.Ct. 144 at pages 147–148, 4 L.Ed.2d 127, where the Court said:

"But the section contains nothing to that effect, and, therefore, to uphold this addition to the tax would be to hold that it may be imposed by regulation, which, of course, the law does not permit. United States v. Calamaro, 354 U.S. 351, 359 [77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394]; Koshland v. Helvering, 298 U.S. 441, 446–447 [56 S.Ct. 767, 769–770, 80 L.Ed. 1268]; Manhattan [General Equipment] Co. v. Commissioner, 297 U.S. 129, 134 [56 S.Ct. 397, 399, 80 L.Ed. 528]."

We agree with the language of the Tax Court's opinion in Coady v. Commissioner, supra, in which it was said:

''There being no language, either in the statute or committee report, which denies tax free treatment under Section 355 to a transaction solely on the grounds that it represents an attempt to divide a single trade or business, the Commissioner's regulations which impose such a restriction are invalid, and can not be sustained.'' 33 T.C. at page 739.

Failing to find any ambiguity in the language of the statute, we do not consider the legislative history to offer any support to the position of the United States. In point of fact, such history as is presented to us by the briefs of the litigants appears clearly to support the contention of the taxpayer that Congress had no such purpose as is expressed in the Treasury Regulation.

We conclude that the trial court correctly determined that as applied to the facts of this case, Section 1.355–1(a) is invalid to the extent that it provides "Section 355 does not apply to the division of a single business."

The judgment of the trial court is affirmed.