## TEXON OIL & LAND CO. OF TEXAS v. UNITED STATES.

### No. 9456.

Circuit Court of Appeals, Fifth Circuit.

Nov. 28, 1940.

Rehearing Denied Jan. 14, 1941.

Burney Braly, of Fort Worth, Tex., for appellant.

Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., Carl J. Marold and Sewall Key, Sp. Assts. to the Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, on February 28, 1927, entered as an asset on its books, 987 shares of Reagan County Purchasing Company stock, issued in the name of the Texon Oil and Land Company of Delaware, its parent company and owner of its shares. In its income tax return filed for its fiscal year, 1926–27, appellant reported these shares as an asset received during the year at a value of $1, "the real value to be later determined." Thereafter things began to happen, taxwise.

The Commissioner valued the stock at $241,138.61, its actual value in 1927, and added it to the appellant's income in that year. On January 31, 1932, appellant paid the resulting deficiency assessment, $18,-365.07 and $5,046.12 interest, and filed with

the collector of internal revenue, a claim for refund, asserting that the stock was received in 1924 and not in the fiscal year in question. Its claim denied, it brought this suit. In it appellant made two main contentions; (1) that issued to and held in the name of Texon Oil & Land Company of Delaware, of which appellant was the mere creature, the shares of stock never became appellant's property so as to be taxable to it; (2) if they did, they were received as income not in its fiscal year ending in March, 1927, but in some prior year. Heard on stipulation and much testimony, both of these contentions were on full findings, determined against it. Appellant here, accepting the finding of fact that it was in 1927, the owner of the shares, makes two main contentions: (1) that it received them in a non-taxable transfer from its parent corporation, and (2) that, in any event, the shares were received in 1924 when they were first escrowed.

■ Careful consideration of these contentions leaves us in no doubt that the first is entirely without merit and that the second, while debatable, must be resolved against appellant. For, as to the first it is quite plain that the taxpayer was created and exists only for the purpose of carrying out the contract, the Delaware Company made in 1924, of which more hereafter, and that it stands as to taxability on account of the stock, exactly as the Delaware Company would have stood if appellant had not been created as its alter ego to stand for it in Texas. If then, the stock was received so as to make its receipt taxable in 1924, when the shares of which it is a part were escrowed, appellant would of course, not be taxable as to it in 1926–27. While if it was not received until 1926–27, appellant plainly would be. As to the second point, whether the stock was received in 1924, when the shares of which it is a part were issued to the four corporations and escrowed, or in 1927, when appellant taxpayer's share was definitely determined and allocated to it, we think a common sense understanding of the undisputed facts as they are stipulated and found, admits of no other conclusion than that the particular shares in question were received, not in 1924, when the whole lot was escrowed, but in 1926–27, when the particular shares were allocated.

Both appellant and appellee cite many cases in support of their respective views, and it must be admitted that these decisions in their close applications of the statutory rule to the particular facts of each case, leave much to be desired as definite and certain guides, indeed, they seem to have invested the application of the rule with considerable uncertainty.

We shall not attempt to analyze or reconcile these decisions with each other or with our own. For, whatever uncertainties they may have created in the application of the rule, the rule itself is statutory and plain and in applying it to this case where the facts are clear and without dispute, we find no difficulty in determining that in denying the refund, the District Judge was right. These are the facts: Appellant, Texon Oil & Land Company of Texas, is a Texas corporation, all of whose stock is owned and held by the Texon Oil & Land Company, a Delaware corporation. Upon the formation of appellant company, the Delaware corporation conveyed all its leaseholds and other property which was the subject of the contracts of October and November, 1924, hereafter referred to, and appellant assumed and agreed to carry out all the obligations of these contracts. In October, 1924, Texon Oil & Land Company, a Delaware corporation together with the Big Lake Oil Company, Group No. 1, Oil Corporation and Group No. 2, Oil Corporation, all Delaware Corporations, were the owners and holders of leases of certain lands in Reagan County, Texas, which had prospects of producing oil. Having no pipe line or railroad facilities with which to convey their oil to market, these corporations as producers on October 22, 1924, and November 24, 1924, entered into contracts with the Marland Company and with individuals to provide for the financing of a pipe line and sale of the oil. The first contract provided that the parties should organize a purchasing company to be known as the Reagan County Purchasing Company, Inc., to which the producers should sell all of their oil from the land in Reagan County for a stipulated price. The Marland Company was to contribute the capital for the new company for which it was to receive preferred stock. It also paid $500 for 51% of the common stock. The contract further provided that the remaining 49% should be divided between producers in such proportions as they should determine between themselves. Pending the determination of the exact amount to which each was entitled, 1/2 of the 49% of the stock was to be issued temporarily in the name of the Big Lake

Oil Company and the other 1/2 jointly in the names of the Texon Oil & Land Company and Group No. 1 and Group No. 2, Oil Corporations, called the Texon Group.

These original certificates were issued, subject to the following conditions and restrictions: (1) the stock was to be endorsed in blank by the companies named in the certificates and delivered to an escrow agent for the benefit of the producers in such number of shares or undivided interests in the whole number of shares as shall be agreed upon by the producers in writing; (2) the escrow could not be released until all the preferred stock was retired; (3) during the period of the escrow, the 49% of the stock could not be sold or transferred to anyone except the Marland Company or another producer, as and after the true and ultimate ownership as between the producers shall have been determined; (4) during the period of the escrow no dividends were to be paid on the common stock.

It was originally agreed by the producers named in the contracts that the 49% of the common stock of the Reagan County Company should be divided among them as soon after December, 1926, as it could conveniently be done, based proportionately upon the amount of oil that each delivered to the purchasing company between December 1, 1925, and December 1, 1926. The lands of the appellant company produced no oil and the determination that appellant was to receive 987 shares of the Reagan County stock, free from restrictions and limitations, was not made until December 4, 1926, on which date it was agreed among the producing companies that the stock of the Texon group should be divided according to acreage held by each company, on which basis appellant was entitled to receive 987 shares. The last of the preferred stock was retired on January 31, 1927, and on February 28, 1927, appellant entered the 987 shares of stock as an investment on its books. In accordance with instructions, the stock was released from escrow in 1927, and new certificates free from all restrictions were issued on March 21, 1927, in the name of the Texon Company of Delaware, and they thus remained up until the trial of this suit. Appellant, however, received all dividends that have ever been paid on the 987 shares of stock and used the money as operating funds. In its income tax return for the fiscal year ending March 31, 1927, appellant reported the 987 shares of stock as an asset received during that year and the Texon Oil & Land Company, the Delaware Corporation, did not report these shares as income or show them as assets. In the consolidated income tax return filed by the Delaware Corporation and the appellant, these shares of stock were shown as an asset of the appellant and not of the Delaware Corporation and the dividends paid were reported as received by appellant and not the Delaware Corporation. The commissioner, relying on these returns, did not assess the Delaware Corporation as owner of these shares, but assessed appellant.

On these facts, we think it quite clear that tax questions aside, all reasonable minds would be bound to conclude that while the contract of 1924 did determine that the corporations named as first parties would under certain conditions and in certain proportions receive the 49% of the stock then placed in escrow, it did not determine what amount each was to receive nor did it either determine or fix any basis for determining when or what shares would be placed under the dominion and control of any particular company. For by its terms this was not and could not be determined until the preferred shares were paid off and the distribution had been made in accordance with a formula, the application and effect of which was yet to be worked out. The uncertainty of this is further emphasized by the fact that whereas the first plan was to distribute according to production, the second plan, an entirely different one, forced no doubt because of lack of production on the part of some of the owners, was to distribute according to acreage. Under these facts, a practical person, the man on the street, would be bound to conclude that none of the corporations had really received any of the stock in such manner as to have dominion and control over it, until 1926–27, when the preferred shares were paid off, the basis of distribution agreed to, and the shares were issued in accordance therewith.

Appellant places its reliance in many cases where notwithstanding there were matters still to be determined, the courts have held that property was actually received so as to be taxable. It particularly relies on cases where partners or joint enterprisers have received property to be

divided on some then known or knowable basis and the courts have held that the property was then received by each enterpriser though the act of distribution was deferred. But these cases are wholly different from this one. They merely represent instances of the application of the rule, that property is received when it is within the power of its receiver to appropriate it, even though some definitively understood and determined act is still to be done. None of these cases is at all comparable to this one. Here there was lacking the whole basis on which the distribution could be determined or made. No one knew or could know the result until the trial year had expired. It may be that in some of the cases appellant relies on, the courts went a long way to find receipt of full and complete dominion, but it would be going a much longer way in the other direction for us to find that in 1924, there was receipt here.

This court and other courts have often said that taxation is a practical matter and that strained construction should not be resorted to, to accrue or fix a tax liability. We and other courts with equal uniformity have said that tax liability may not be avoided by fine spun and legalistic decisions. The tax was rightly assessed, the judgment denying refund was right. It is affirmed.