THEODORE F. APPLEBY AND MARIE W. APPLEBY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77741. Filed February 16, 1961.

*Robert V. Carton, Esq.*, for the petitioners.
*Sheldon Seevak, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The only issue is whether the distribution by the agency of all the stock of its wholly owned subsidiary, the building corporation, to its stockholders, the petitioners, qualifies as a nontaxable distribution under section 355 of the Internal Revenue Code of 1954.[1]

---

[1] SEC. 355.  DISTRIBUTION OF STOCK AND SECURITIES OF A CONTROLLED CORPORATION.
  (a) EFFECT ON DISTRIBUTEES.—
    (1) GENERAL RULE.—If—
      (A) a corporation (referred to in this section as the "distributing corporation")—
        (i) distributes to a shareholder, with respect to its stock, * * *

      \*        \*        \*        \*        \*        \*        \*

solely stock or securities of a corporation (referred to in this section as "controlled corporation") which it controls immediately before the distribution,
      (B) the transaction was not used principally as a device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation or both * * *
      (C) the requirements of subsection (b) (relating to active businesses) are satisfied, and
      (D) as part of the distribution, the distributing corporation distributes—
        (i) all of the stock and securities in the controlled corporation held by it immediately before the distribution, * * *

      \*        \*        \*        \*        \*        \*        \*

then no gain or loss shall be recognized to (and no amount shall be includible in the income of) such shareholder or security holder on the receipt of such stock or securities.

      \*        \*        \*        \*        \*        \*        \*

Footnote continued on following page.

Section 355(a), insofar as applicable here, provides that (1) if a corporation distributes to its shareholders with respect to their stock, solely stock of a corporation which it controlled immediately before the distribution, (2) the transaction was not used principally as a device for distributing the earnings or profits of either corporation, (3) the requirements of subsection (b) with reference to active conduct of businesses are satisfied, and (4) all of the stock of the controlled corporation held by the distributing corporation is distributed, then no gain or loss shall be recognized to the shareholders on receipt of the stock.

Petitioners contend that all the above requirements have been met and respondent contends that neither corporation was actively engaged in the conduct of the business of property management or the renting of real estate throughout the 5-year period ending on the date of distribution within the meaning of section 355.

The evidence shows that the father of Theodore F. Appleby established the real estate brokerage and the insurance brokerage business in 1885 at the site that now is 230 Main Street in Asbury Park; that at some undetermined date Theodore became engaged in the business with his father; that together they acquired the 230 Main Street property in 1922; that they erected the present building, a small part of which they used for their business and the remaining space was rented to various tenants; that in 1932 the business was incorporated under the name of T. Frank Appleby Agency, Inc., with petitioners owning all the stock; that the business of the agency was carried on in the building until January 1955; that it acquired title to the property in 1947; that its business grew and expanded to where it needed and occupied more space; that at some undetermined time it occupied space on both floors of the building to the extent of 50 percent of the

---

Footnote continued from preceding page.

(b) REQUIREMENTS AS TO ACTIVE BUSINESS.—

(1) IN GENERAL.—Subsection (a) shall apply only if either—

(A) the distributing corporation, and the controlled corporation * * * is engaged immediately after the distribution in the active conduct of a trade or business, * * *

*     *     *     *     *     *     *

(2) DEFINITION.—For purposes of paragraph (1), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if—

(A) it is engaged in the active conduct of a trade or business, * * *

(B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution,

(C) such trade or business was not acquired within the period described in subparagraph (B) in a transaction in which gain or loss was recognized in whole or in part, and

(D) control of a corporation which (at the time of acquisition of control) was conducting such trade or business—

(i) was not acquired directly (or through one or more corporations) by another corporation within the period described in subparagraph (B), or

(ii) was so acquired by another corporation within such period, but such control was so acquired only by reason of transactions in which gain or loss was not recognized in whole or in part, or only by reason of such transactions combined with acquisitions before the beginning of such period.

total floor area; that the agency continued to rent space to tenants, there being five during the years 1950 through 1953 and four in 1954 and 1955; that the gross rental received by the agency during the 5-year period, 1950 through 1954, was $3,700 in 1950, $3,761 in 1951, $4,062.50 in 1952, $3,600 in 1953, and $3,515 in 1954; that its gross income from all sources was $88,507.95 in 1950, $108,322.03 in 1951, $103,301.23 in 1952, $115,686.84 in 1953, and $163,264.17 in 1954; that the agency incurred expenses in connection with the property, covering property taxes, insurance, maintenance and supplies, janitor service, heating oil and repairs, depreciation, and interest on mortgage, amounting to $7,725.41 in 1950, $9,459.22 in 1951, $7,375.98 in 1952, $7,104.10 in 1953, and $8,115.46 in 1954.

The evidence also shows that no records were maintained as to the net income of the rentals; that the net income of the agency for the 5-year period was $5,114.72 in 1950, $12,140.30 in 1951, $6,007.92 in 1952, $8,224.30 in 1953, and $38,046.53 in 1954; that during the same period Theodore and Marie received salaries in the respective amounts of $15,600 and $3,600 in 1950, $19,000 and $3,600 in 1951, $19,000 and $3,600 in 1952, $23,250 and $3,600 in 1953, and $30,000 and $5,200 in 1954.

It is further shown that in January 1955 the agency caused the building corporation to be incorporated; that it transferred its only asset, the 230 Main Street property, to the new corporation in exchange for all the 750 shares of no-par-value capital stock and immediately distributed the stock to the petitioners; that thereupon the building corporation owned and operated the property; that at the same time the agency and the building corporation executed a lease under which the entire building was rented to the agency for the annual rental of $12,000, with a provision that any other rentals received would be applied on the agency's rental; that the fair market value of the 750 shares of stock distributed was $50,400 and that as of December 31, 1955, the agency had undistributed earnings and profits in the amount of $72,315.74.

Patently, the building corporation in January 1955, when it was created, when it received the 230 Main Street property, and when its stock was distributed to petitioners, had not been engaged in the active conduct of a business for 5 years prior to the distribution of its stock. On the other hand, it is obvious that at the time of the transaction the agency, the controlling and distributing corporation, had been engaged during the 5-year period in the conduct of an active trade or business, but was it engaged in the active business of property management or the rental of real estate for which business its subsidiary, the building corporation, was created?

Under the original regulation (sec. 1.355–1(a)), section 355 was made applicable to divisions of only those corporations which had conducted two or more separate and distinct businesses for a 5-year period and that "Section 355 does not apply to the division of a single business." However, a majority of this Court held that that part of the regulation was invalid and that there was nothing in the statute that prevented the section from applying to the division of a single business into two separate businesses, where such business had been actively conducted over the required 5-year period of time. *Edmund P. Coady*, 33 T.C. 771.

However, we are not confronted with the question of a single business being divided into two businesses. To the contrary, petitioners contend that the agency was engaged in the active conduct of the business of renting real estate or property management as well as conducting the real estate brokerage and insurance brokerage business; and that the building corporation was organized for the purpose of operating the rental of its real estate.

Subsection (c) of the above-mentioned regulation (sec. 1.355–1) describes "Active business" as follows:

> Section 355 is not applicable unless the controlled corporation and the distributing corporation are each engaged in the active conduct of a trade or business. For specific rules in this connection see section 355(b)(1) and (2). Without regard to such rules, for purposes of section 355, a trade or business consists of a specific existing group of activities being carried on for the purpose of earning income or profit from only such group of activities, and the activities included in such group must include every operation which forms a part of, or a step in, the process of earning income or profit from such group. Such group of activities ordinarily must include the collection of income and the payment of expenses. It does not include—
>
> (1) The holding for investment purposes of stock, securities, land or other property, including casual sales thereof (whether or not the proceeds of such sales are reinvested).
>
> (2) The ownership and operation of land or buildings all or substantially all of which are used and occupied by the owners in the operation of a trade or business, or
>
> (3) A group of activities which, while a part of a business operated for profit, are not themselves independently producing income even though such activities would produce income with the addition of other activities or with large increases in activities previously incidental or insubstantial.

Several examples are set forth in the regulation that illustrate the application of the above-described rules, two of which are as follows:

> Example (3). Corporation C, a bank, owns an eleven-story downtown office building, the ground floor of which is occupied by it in the conduct of its banking business and the remaining ten floors of which it rents to various tenants. The ten floors are rented, managed and maintained by the real estate department of the bank. It is proposed to transfer the building to a new corporation and distribute the stock of such new corporation to the bank's shareholders.

The activities in connection with banking constitute a trade or business as do also the activities in connection with the rental of the building.

Example (4). Corporation D, a bank, owns a two-story building in a suburban area, the ground floor and approximately one-half of the second floor of which is occupied by it in the conduct of its banking business. The remainder of the second floor is rented as storage space to a neighboring retail merchant. It is proposed to transfer the building to a new corporation and distribute the stock of such new corporation to the bank's shareholders. With respect to the rental of part of the second floor of its building, the bank is not engaged in the active conduct of a trade or business, such activity being only incidental to its banking business.

While the facts in the instant case do not fall exactly within either example, example No. 4 is more applicable than example No. 3.

Example No. 4 was followed and upheld by this Court in *Isabel A. Elliott*, 32 T.C. 283. There Centrifix Corporation bought an old house in 1946, occupying about half of it in its business and renting the remainder of it to others until it was sold in 1950, at which time it bought a larger building. Title to the new building was immediately transferred to a newly formed corporation, Centrifix Management Corporation, in April 1950. Management rented about half the space in the new building to Centrifix and held the rest for rental to others. On December 15, 1954, Centrifix distributed all the stock of Management to Elliott, its principal stockholder, in exchange for all of Centrifix's issued preferred stock. The Court held that the distribution of stock to Elliott did not qualify as a tax-free distribution under section 355 since Centrifix was not actively conducting a real estate rental business prior to April of 1950.

In the instant case we have a similar situation. Prior to distribution of the stock the building in principal part was utilized by the agency for the conduct of its business. On a square footage basis the space occupied was approximately 50 percent of the floorspace of the building but was 70 percent of the rental value. The renting of the space the agency did not use in the conduct of its other business was incidental and that is shown by the small activity exerted, the small amount collected in rentals as compared to the total income received from all sources and the lack of records maintained to show profits or losses from the operation of a rental business. As stated in the opinion of the *Elliott* case, *supra*, "we do not think a mere passive receipt of income from the use of property which is used in the principal trade or business and which is only incidental to, or an incidental use of a part of property used primarily in, the principal business would constitute the active conduct of a trade or business within the meaning of section 355(b) of the Code, whether or not such use of property might constitute a trade or business within the meaning of other sections of the Code."

Petitioner's references to such cases as *John D. Fackler*, 45 B.T.A. 708, affd. 135 F. 2d 509, and *Leland Hazard*, 7 T.C. 372, are not appropriate in the application of section 355.

Respondent is sustained.

*Decision will be entered under Rule 50.*