Henry H. Bonsall, Jr., and Martha G. Bonsall v. Commissioner. C. Jordan Vail and Nancy B. Vail v. Commissioner.
Bonsall v. Commissioner
Docket Nos. 83670 and 83705.
United States Tax Court
T.C. Memo 1962-151; 1962 Tax Ct. Memo LEXIS 157; 21 T.C.M. (CCH) 820; T.C.M. (RIA) 62151; June 25, 1962
Eugene J. Steiner, Esq., 90 State St., Albany, N.Y., for the petitioners. Howard B. Sweig, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the income tax of Henry H. Bonsall, *158 Jr., and Martha G. Bonsall for the year 1956 in the amount of $4,027.91, and in the income tax of C. Jordan Vail and Nancy B. Vail for the year 1956 in the amount of $50.25. The issue for decision is whether petitioners received a taxable distribution of stock of Abon, Inc., in the year 1956. It is petitioners' position that no distribution of stock of Abon, Inc., was received by them until 1957, but that if the distribution of such stock was received in 1956, the distribution was tax free under section 355 of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. Henry H. Bonsall, Jr. (hereinafter referred to as Bonsall) and Martha G. Bonsall (hereinafter referred to as Martha), husband and wife residing at Albany, New York, filed a joint Federal income tax return for the year 1956 with the district director of internal revenue at Albany, New York. C. Jordan Vail (hereinafter referred to as Vail) and Nancy B. Vail (hereinafter referred to as Nancy), husband and wife residing in Delmar, New York, filed a joint Federal income tax return for the year 1956 with the district director of internal *159 revenue at Albany, New York. Nancy is the daughter of Bonsall and Martha. She married Vail in 1950. Albany Linoleum and Carpet Co., Inc. (hereinafter referred to as Albany Linoleum), is a corporation organized under the laws of New York in 1924. Since the time of its organization, it has been engaged in the wholesale distribution of linoleum, carpets, rugs, and supplies used in refinishing floors. The Armstrong Cork Company of Lancaster, Pennsylvania has always been the largest supplier of the floor covering products purchased for resale by Albany Linoleum. At all times pertinent hereto, Bonsall and Martha have been the controlling shareholders of Albany Linoleum. On December 31, 1956, they owned 38.19 percent and 38.16 percent, respectively, of Albany Linoleum's common stock. During 1956 and for many years prior thereto, Bonsall was president of Albany Linoleum. During 1956 Martha was vice president and treasurer of Albany Linoleum, and during prior years she had held various corporate positions. During the taxable year 1956 Vail and Nancy were each shareholders of Albany Linoleum and Vail was also an employee of that corporation. For some years prior to 1945 Albany Linoleum's *160 business was conducted from rented premises under a lease which required that it be vacated if the building was sold. When the building in which it was conducting its business was sold in 1945, Albany Linoleum acquired a parcel of real property in Albany, New York which was bordered by Northern Boulevard, Spruce, and Elk Streets. A 3-story building was located thereon with the address of 64 Northern Boulevard. This building thereafter served as Albany Linoleum's principal place of business. The gross usable floor area contained in this building aggregated 40,200 square feet. After making allowances for space devoted to stairwells, elevators, washrooms, and a truck loading dock, the net usable floor area in the premises at 64 Northern Boulevard aggregated 29,860 square feet. The cost to Albany Linoleum of this building was $75,454.03. At the same time in 1945 Albany Linoleum also acquired premises at the corner of Northern Boulevard and Elk Street, known as 231 Elk Street. These premises adjoined the property known as 64 Northern Boulevard. The premises at 231 Elk Street consisted of a 2-story frame building with a floor area of approximately 1,656 square feet per floor or a total *161 of 3,312 square feet. Commencing in May 1946 and continuing through August 31, 1956, Albany Linoleum leased 2,770 square feet of the premises at 64 Northern Boulevard to Armstrong Cork Company. During the first year of this rental agreement Armstrong Cork Company paid yearly rental to Albany Linoleum in the amount of $1,299.90. During the entire period that it leased the premises from Albany Linoleum, Armstrong Cork Company paid a rental therefor which was less than the fair rental value of the premises. For a number of years prior to the formation of Albany Linoleum, Bonsall had been employed by Armstrong Cork Company, and at all times thereafter had maintained a very close personal relationship with representatives of Armstrong Cork Company. The arrangement whereby Albany Linoleum leased the premises to Armstrong Cork Company at less than the fair rental value thereof was entered into because of Bonsall's desire to maintain this close personal relationship. For a period of 5 1/2 years prior to 1954 Albany Linoleum rented the two floors of 231 Elk Street to the Albany Poultry Company at an annual rent of $600. The following schedule shows Albany Linoleum's gross profits from *162 floor covering sales, gross real estate rentals, and total corporate net income for the years 1952 through 1956: Gross Profit
Gross
Total
From Floor
Real Estate
Corporate
Year
Covering Sales
Rentals
Net Income
1952
$318,650.55
$1,710.00
$40,955.17
1953
333,118.52
1,350.00
43,309.75
1954
322,412.45
1,158.00
32,865.77
1955
351,479.74
1,054.00
36,853.84
1956
388,890.81
[1] 628.00
38,951.81
Albany Linoleum had the following expenses of operation of the entire premises at 64 Northern Boulevard and 231 Elk Street for the years 1952 through 1956: Heat, Light, Real Estate
Year
and Power
Taxes
Depreciation
1952
$1,537.54
$3,767.43
$2,415.52
1953
1,447.01
2,290.08
2,415.52
1954
1,886.03
4,526.61
2,415.53
1955
2,117.81
4,622.74
2,415.52
1956
2,168.29
5,141.11
1,658.32 In addition to these items, Albany Linoleum, on its Federal income tax returns for the years 1952 through 1956 deducted the following corporate expenses (rounded to the nearest dollar): 1952
1953
1954
1955
1956
Officers' salaries
$50,704
$53,400
$54,620
$43,158
$45,452
Repairs
1,526
3,547
1,196
441
1,861
Interest
2,699
2,781
4,153
3,802
3,692
Insurance
2,462
3,682
3,153
2,045
4,641
Supplies
7,876
7,736
6,496
6,517
6,699
*163 No allocations of expenses to the portions of its properties rented were made on the records of Albany Linoleum or in the financial statements prepared by its accountants. During 1956 the officers of Albany Linoleum decided to make an addition to the property at 64 Northern Boulevard. It was decided to raze the frame building at 231 Elk Street and place the addition on this property. The addition was to consist of four floors having a net usable area of 1,656 square feet per floor or an aggregate of 6,624 square feet. The estimated construction cost was $44,000, of which $36,000 was to be financed by a construction mortgage loan. The officers of Albany Linoleum decided that it would be necessary to place a $90,000 mortgage on the completed building in order to pay off the currently existing mortgage on the building and have the necessary construction funds available. Bonsall as president of Albany Linoleum applied to the Albany Savings Bank on February 8, 1956, for a mortgage loan in the amount of $90,000 and was advised by a representative of that bank that such a loan might be arranged if a separate corporation were formed to take title to the property and Albany Linoleum became *164 the tenant of the mortgaged property, and the rentals provided for in the lease were assigned to the bank as further collateral for the loan. Subsequently, the mortgage loan and real estate committee of the Albany Savings Bank agreed to make a mortgage loan of $90,000 to a new corporation to be formed to own the real estate at 64 Northern Boulevard including the new addition thereto on the condition that the lessor assign to the mortgagee the rentals provided for in a lease to be executed by Albany Linoleum as lessee and the new corporation as lessor, and upon the further condition that Bonsall execute a personal guarantee of the performance of the lease. Bonsall personally agreed to these conditions and submitted the proposal to the shareholders of Albany Linoleum at a meeting called for that purpose. The shareholders of Albany Linoleum at this meeting voted to take the steps necessary to comply with the loan conditions proposed by the bank. Accordingly Abon, Inc. (hereinafter referred to as Abon), was organized to acquire the property located at 64 Northern Boulevard and 231 Elk Street. The certificate of incorporation of Abon was filed with the Secretary of State of New York on *165 July 27, 1956, and provided for the issuance of 1,500 shares of stock of a par value of $100 per share or a total capitalization of $150,000. Abon's incorporators were Eugene J. Steiner, Richard R. Rowley, and Richard C. Johnson, and in the certificate of incorporation each of these individuals subscribed to one share of Abon's stock and was named to serve as one of Abon's directors until the first stockholders meeting. On July 30, 1956, a meeting of Albany Linoleum stockholders was held at which a resolution was adopted which authorized Bonsall as president to submit a written offer to sell the property at 64 Northern Boulevard and 231 Elk Street to Abon on the condition that Abon Issue 1,216 shares of its common stock, having a par value of $100.00 each, to the stockholders of record of Albany Linoleum & Carpet Co., Inc. as of July 30, 1956 at 12 noon in the ratio of one share of the common stock of Abon, Inc. for each twenty shares held in Albany Linoleum & Carpet Co., Inc. On August 2, 1956, a meeting was held by the incorporators and subscribers to the capital stock of Abon at which time proposed by-laws were adopted for that corporation. The first meeting of the board of *166 directors of Abon was also held on August 2, 1956, at which time Eugene J. Steiner, Richard R. Rowley, and Richard C. Johnson each resigned as a director and assigned in blank to the company his subscription right for one share of Abon stock. Bonsall, Martha, and Willis E. Snyder were elected as directors to fill the vacancies resulting from the resignations. Two other directors were then elected, and these directors unanimously elected as corporate officers Vail, president and treasurer; Bonsall's son Henry, vice president; and Elvin N. Jones, secretary. Vail was thereupon authorized to open a bank account with the Mechanics & Farmers Bank of Albany. A written proposal from Albany Linoleum was then presented to Abon's board of directors which provided in part as follows: IT IS HEREBY PROPOSED to transfer to Abon, Inc. a corporation duly organized and existing under the laws of the State of New York with its office and principal place of business at 64 Northern Boulevard, Albany, New York, the real property hereinbefore described [64 Northern Boulevard and 231 Elk Street], and IT IS FURTHER PROPOSED that the consideration for the said sale shall consist of the assumption by Abon, *167 Inc. of the existing mortgage of $54,000.00, the assumption by Abon, Inc. of the obligations of Albany Linoleum & Carpet Co., Inc. pursuant to a certain contract for the construction of an addition to the buildings on the premises, and to issue its common stock to the stockholders of record of Albany Linoleum & Carpet Co., Inc. as of July 30, 1956 in the ratio of one share of the common stock of Abon, Inc. for each twenty (20) shares of stock of Albany Linoleum & Carpet Co., Inc. Abon's board of directors thereupon adopted the following resolution: WHEREAS a written proposal has been made to this Corporation in the form as set forth above in these minutes, and WHEREAS in the judgment of this Board of Directors, the assets proposed to be transferred to the Corporation are reasonably worth the amount of the consideration demanded therefor, and that it is in the best interests of this Corporation to accept the said offer as set forth in said proposal. NOW THEREFORE, IT IS RESOLVED that said offer, and the terms thereof as set forth in said proposal, be and the same is hereby accepted, and it is FURTHER RESOLVED, that the officers of this Corporation are authorized and directed *168 to execute and deliver such instruments or documents and make such arrangements as may be required to fulfill the foregoing acceptance of said proposal. At this meeting it was also resolved that the stock and transfer book then presented be adopted as the stock and transfer book of Abon. On July 30, 1956, Bonsall and Martha each owned 9,320 shares of Albany Linoleum stock, thereby entitling them to 466 shares each of Abon stock; Vail and Nancy owned an aggregate of 700 shares of Albany Linoleum stock, thereby entitling them to 35 shares of Abon stock. On September 12, 1956, pursuant to a written waiver of notice executed by Bonsall and Martha, the first meeting of Abon's stockholders was held, at which time Abon's secretary read the roll of the stockholders appearing in the company's stock record book. A quorum being present, the stockholders adopted the by-laws and ratified all acts of the incorporators and directors of Abon. Vail, Bonsall, and Martha signed the minutes of Abon's first stockholders meeting. A bound ledger entitled, "Stock & Transfer Ledger Abon, Inc." contains on the first two lines of page B, the following entry: Certificates
issued
Time
From whom
became
Cert.
No. of
shares were
Name of stockholder
Place of residence
owner
No.
shares
transferred
Henry H. Bonsall, Jr.
80 Brookline Ave.,
9/12/56
1
466
Original issue
Albany
Martha G. Bonsall
80 Brookline Ave.,
9/12/56
5
466
Original issue
Albany
*169 The first two lines of page V of this ledger contain the following entries: Certificates
issued
Time
From whom
became
Cert.
No. of
shares were
Name of stockholder
Place of residence
owner
No.
shares
transferred
C. Jordan Vail
60 Wisconsin Ave.,
9/12/56
15
380
Original issue
Delmar
Nancy Lee B. Vail
60 Wisconsin Ave.,
9/12/56
16
405
original issue
Delmar
On September 13, 1956, title to the realty located at 64 Northern Boulevard and 231 Elk Street was conveyed to Abon in accordance with the terms submitted by Albany Linoleum on August 2, 1956, and accepted on that date by the board of directors of Abon. On September 13, 1956, Abon, as lessor, and Albany Linoleum, as lessee, executed a lease covering the premises at 64 Northern Boulevard including the 1956 addition, except for that portion of the total premises then occupied by Armstrong Cork Company. Also, on September 13, 1956, a special meeting of Abon's board of directors was held at which time it was resolved that Abon should borrow $36,000 on a mortgage construction loan in order to complete the pending building activities. Both Bonsall *170 and Martha were present and participated in this meeting. On September 13, 1956, the Albany Savings Bank made a mortgage loan for $90,000 to Abon, of which $54,000 represented Abon's assumption of mortgage loans previously owed by Albany Linoleum to the Mechanics & Farmers Bank which had been assigned to the Albany Savings Bank. On September 13, 1956, Abon executed an assignment of rent to the Albany Savings Bank which related to the future rentals due under Abon's lease with Albany linoleum. Immediately after September 13, 1956, the fair market value of the net assets transferred to Abon was $9,707.87 or $7.96 per share of stock computed on the basis of 1,219 shares of Abon stock. On March 15, 1957, Abon filed its corporate Federal income tax return for the calendar year 1956. On this return it reported gross rental income of $6,314, total expenses of $4,316.34, and taxable income of $1,997.66. On the balance sheet contained in this return, it showed common stock in the amount of $1,219, paid-in or capital surplus in the amount of $8,488.87, and earned surplus and undivided profits of $1,398.36. Albany Linoleum's balance sheet as of December 31, 1956, reflects no stock or *171 other ownership in Abon but does reflect decreases in land and buildings and other fixed depreciable assets. Albany Linoleum had undistributed earnings and profits on December 31, 1956, in the amount of $171,292. When Vail assumed his duties as president of Abon, he began to study its capitalization under the certificate of incorporation of July 26, 1956. He also called an accountant to assist him in setting up books for Abon since he contemplated being bookkeeper for the company as well as its president. When the accountant came over to discuss setting up the books, Vail sked his opinion of how to handle the company's capitalization since the 1,219 shares of stock at $100 par would represent $121,900, whereas the value of the property transferred to Abon for the stock was only $9,707.87. The accountant discussed this problem with an attorney and thereafter advised Vail that a new certificate of incorporation amending the original certificate should be filed since the par value of the stock issued for the property should not exceed the value of the property. On February 20, 1957, a special meeting of Abon's stockholders was held. A written waiver of notice of this special meeting *172 was executed by Bonsall, Martha, and Vail. At this meeting Abon's stockholders voted to amend Abon's certificate of incorporation so that Abon's capital stock would be increased from 1,500 shares to 150,000 shares and the par value decreased from $100 per share to $1 per share, thus leaving the total capitalization the same, namely $150,000. On February 26, 1957, a certificate of amendment of certificate of incorporation of Abon was executed by Abon's originators and incorporators, and the persons executing this certificate stated therein that they were all of the subscribers to Abon stock, that no shares of Abon stock had been issued, and that no officers of the corporation had been elected. On April 2, 1957, this certificate amendment and the affidavit were filed with the Secretary of State of New York. On April 5, 1957, certificates representing shares of Abon stock of a par value of $1 per share were executed. These certificates included certificate No. 1 for 466 shares issued to Bonsall, certificate No. 5 for 466 shares issued to Martha, certificate No. 15 for 380 shares issued to Vail, and certificate No. 16 for 405 shares issued to Nancy. Seven hundred and fifty of the 785 *173 shares issued to Vail and Nancy represented by certificate Nos. 15 and 16 were purchased by them with checks, one to each of them, dated February 15, 1957, and each in the amount of $2,985, drawn by Bonsall and endorsed by Nancy and Vail, each, to Abon. Bonsall made gifts in these amounts to Vail and Nancy, each, with the understanding that they would be used to purchase stock in Abon since additional funds were needed by Abon to complete its building. Bonsall and Martha, on their income tax return for the year 1956, did not include in dividends received from Albany Linoleum as reported therein any amount representing the fair market value of stock of Abon. Respondent in his notice of deficiency increased the dividend income as reported by Bonsall and Martha by the amount of $7,418.72 with the following explanation: (a) It is determined that distribution of 932 shares of stock of Abon, Inc. to you by Albany Linoleum & Carpet Co., Inc. is taxable as a dividend in the amount of $7,418.72 in accordance with Section 301 of the Internal Revenue Code of 1954. Vail and Nancy did not include in the dividend income from Albany Linoleum reported on their income *174 tax return for the year 1956 any amount representing the value of stock of Abon. Respondent in his notice of deficiency increased the dividend income reported by them by the amount of $278.60 with the same explanation as given to Bonsall and Martha, except that the reference was to 35 shares of stock of Abon. Opinion Petitioners take the position that no distribution of stock of Abon was received by them in 1956. but that the stock was received in 1957. In this connection petitioners argue that issuance of the stock in 1956 would have been contrary to section 69 of the New York Stock Corporation Law [1] which provides that shares of stock can be issued for property "to the amount of the value thereof in payment therefor" and that had stock of a par value of $121,900 been issued for property of a value of $9,707.87, the officers of the corporation would have been criminally liable under New York Penal Law, sections 662 and 664, and would have been subject to individual liability at the hands of defrauded creditors under section 70, New York Stock Corporation Law, and section 76, New York General Corporation Law. *175 Petitioners state that there was no actual receipt by them of stock in 1956 and could not have been because of the way the charter of Abon was written, and that there was no constructive receipt of stock by them since such stock was not subject to their unqualified demand in 1956. The fact that property paid in for stock is less than the par value of the stock issued therefor does not under section 69 of the New York Stock Corporation Law invalidate the shares or cause the stock to become void but under certain circumstances it is voidable. Kimmel Sales Corporation v. Lauster, 167 Misc. 514, 4 N.Y.S. 2d 88 (1938). We disagree with petitioners' contention that section 69 of the New York Stock Corporation Law prohibited them from actually receiving stock of Abon in 1956. The sections of the New York Penal Code cited by petitioners deal with fraudulent or intentional misrepresentations and there is no indication from the evidence herein of any such actions on the part of the stockholders of Albany Linoleum. Petitioners cite a number of cases dealing with whether there is receipt *176 of a dividend when a check has been mailed in one year but not received until the following year. They also cite cases holding that the declaration of a dividend which is not paid until a subsequent year is not income to the shareholders until the year in which paid. While the cases cited by petitioners hold that for a dividend to be taxable in a particular year to a shareholder of a corporation, it actually must be received or subject to the unrestricted demand of the shareholder in that year, they do not, with the exception of Texon Oil & Land Co. of Texas v. United States, 115 F. 2d 647 (C.A. 5, 1940), involve a question of issuance of stock. Texon Oil & Land Co. of Texas, supra, involved the formation of a new corporation in 1924 under an agreement whereby 49 percent of the common stock of the new corporation would be issued to certain oil producers under certain conditions and in certain proportions to be later ascertained, but did not determine what amount each was to receive or determine or fix a basis for determining what shares would be placed under the dominion or control of any particular oil producer. It was these uncertainties that led the *177 Court to conclude that the taxpayer there involved had not received any stock of the new company in 1924 in such a manner as to have dominion and control over it. In that case the stock certificates for the 49 percent of the new corporation's stock were issued temporarily to certain of the oil producers, endorsed by them in blank, and held in escrow upon certain specified conditions. However, in considering the case the Court discussed the taxpayer's ownership of the stock, and not whether certificates evidencing such ownership had been issued to it. The facts of Texon Oil & Land Co. of Texas, supra, are so dissimilar to those here involved that the case is not of assistance in resolving the present issue. It is well settled that stock and the certificate evidencing the ownership of stock are different. Stock ownership in a corporation does not necessarily have to be evidenced by a certificate. A certificate is authentic evidence of title to stock but it is not the stock itself. It certifies to an independently existing fact. Pacific National Bank v. Eaton, 141 U.S. 227 (1891); *178 Flour City Nat. Bank v. Shire, 88 App. Div. 40, 84 N. Y. Supp. 810 (1903), affd. 179 N. Y. 587, 72 N.E. 1141. This Court has recognized in a number of varying situations the distinction between stock and the certificate evidencing ownership of such stock. Scientific Instrument Co., 17 T.C. 1253 (1952), affirmed per curiam 202 F.2d 155 (C.A. 6, 1953); W. F. Marsh, 12 T.C. 1083 (1949); and Anita Owens Hoffer, 24 B.T.A. 22 (1931). Under the facts in the instant case we hold that petitioners were the stockholders of Abon as of September 13, 1956, when the property of Albany Linoleum was transferred to Abon and that they had ownership at that time proportionate to their ownership in Albany Linoleum. Prior to that date the original subscribers to Abon stock had resigned as directors and endorsed their right to subscribe in blank. The directors and officers selected by the stockholders of Albany Linoleum had begun to function. During the year 1956, Abon received income and incurred expenses, and meetings of Abon's stockholders were held. Where a person has acted in recognition of his connection with a corporation *179 as stockholder by virtue of an agreement creating such a relationship he cannot subsequently disclaim the existence of that connection. Beals v. Buffalo Expended Metal Const. Co., 49 App. Div. 589, 63 N. Y. Supp. 635 (1900). While it may have been desirable that the certificate of incorporation of Abon be amended to place a par value on its stock which would permit issuance of 1,219 shares of stock without a possible violation of any law of New York, that company did not exist without shareholders prior to such amendment but in fact did have the same shareholders that Albany Linoleum had. These shareholders were the owners of the Abon stock in proporation to their ownership of Albany Linoleum stocks. Cf. Lodi Iron Works, Inc., 29 T.C. 696 (1958). Petitioners recognized that the transactions here involved constitute a distribution of Abon stock to them by Albany Linoleum even though Abon's stock was never actually owned by Albany Linoleum but contend that even if they did receive such stock in 1956 the distribution was tax free under the provisions of section 355 of the Internal Revenue Code of 1954. [2]
*180 Respondent contends that petitioners have failed to meet the requirements of section 355 in two respects, (1) that they have not shown that the distribution of Abon stock was not used principally as a device for the distribution of earnings and profits of Albany Linoleum and (2) that they have failed to show that Albany Linoleum was actively engaged in a real estate rental business during the 5 years prior to the distribution to petitioners of Abon stock. Respondent argues that whereas the loan conditions advanced by the Albany Savings Bank necessitated the formation of Abon as a separate realty corporation, it was immaterial to the bank who owned Abon stock and that no business purpose existed for distributing the stock to petitioners as distinguished from having it retained by Albany Linoleum. Petitioners take the position that a distribution of Abon stock to them was not a device for the distribution of earnings and profits of Albany Linoleum since the creation of Abon was a business necessity. In view of our decision with respect to respondent's second contention, it is unnecessary to decide whether petitioners have shown that the distribution to them of Abon stock was not *181 principally as a device for the distribution of earnings and profits of Albany Linoleum. Respondent in support of his second contention relies on Isabel A. Elliott, 32 T.C. 283 (1959), and Theodore F. Appleby, 35 T.C. 755 (1961) affd. per curiam 296 F. 2d 925 (C.A. 3, 1962). We have set out in some detail the facts with respect to the rents received by Albany Linoleum from 1952 to 1956, the expenses incurred in maintaining the property, and the space used for rental purposes. The rental to Albany Poultry Company ceased in 1953 and the record is not clear whether this space was ever rented thereafter, but certainly if it was rented at all, it was for only a few weeks. While Bonsall testified of speaking to one or two people about the availability of the space at 231 Elk Street for rent, there is no indication in the evidence that any active effort was made to rent this space. Bonsall testified that it was never listed for rental with an agent and that no signs indicating that the building was for rent were placed thereon. There is no evidence of any other activities engaged in that might be classed as actively attempting to rent the building. *182 The evidence shows that the rental to Armstrong Cork Company was as an accommodation of that company and a help to Albany Linoleum's floor covering business and not as an independent income-producing business of Albany Linoleum. The rent charged to Armstrong Cork Company was during the entire period 1952 to 1956 less than the fair rental value of the premises. Under the facts here present, we agree with respondent that petitioners have failed to show that Albany Linoleum was for 5 years prior to 1956 engaged in a real estate business in conjunction with its floor covering business. Petitioners rely upon the case of Edmund P. Coady, 33 T.C. 771, affd. 289 F. 2d 490 (C.A. 6, 1961), which holds that where a business is divided and one-half of the old corporation's business assets are transferred to a new corporation and the stock of the new corporation issued to a 50 percent stockholder of the old corporation, the distribution qualifies for tax-free treatment under section 355. In so holding we pointed out that nothing in section 355 made it inapplicable to the division of a single business as distinguished from the separation of two distinct businesses *183 and stated at page 777: A careful reading of the definition of the active conduct of a trade or business contained in subsection (b)(2) indicates that its function is also to prevent the tax-free separation of active and inactive assets into active and inactive corporate entities. This is apparent from the use of the adjective "such," meaning beforementioned, to modify "trade or business" in subsection (b)(2)(B), thus providing that the trade or business required by (b)(2)(B) to have had a 5-year active history prior to the distribution, is the same trade or business which (b)(2)(A) requires to be actively conducted immediately after the distribution. Nowhere in (b)(2) do we find, as respondent suggests we should, language denying the benefits of section 355 to the division of a single trade or business. The Coady case was distinguished in the Appleby case with the following statement 35 T.C. 755, 762): However, we are not confronted with the question of a single business being divided into two businesses. To the contrary, petitioners contend that the agency was engaged *184 in the active conduct of the business of renting real estate or property management as well as conducting the real estate brokerage and insurance brokerage business; and that the building corporation was organized for the purpose of operating the rental of its real estate. Petitioners contend that the business of Albany Linoleum was divided between Abon and Albany Linoleum and that the distinction made with respect to the Coady case in the Appleby case is not here applicable. Petitioners do not elaborate on this contention. Under the facts here present, it is clear that all that was transferred to Abon was the real property and that Abon's only activity was leasing that real property to Albany Linoleum and apparently, though the evidence is not unmistakably clear, a small portion to Armstrong Cork Company as Albany Linoleum had previously done. Therefore, the business conducted by Abon was not a part of Albany Linoleum's prior business unless a part of Albany Linoleum's prior business was real estate rental. On the basis of the facts of record, we think that Albany Linoleum was not engaged in a real estate rental business for 5 years prior to 1956 and that this case is indistinguishable *185 from Theodore F. Appleby, supra, and Isabel A. Elliott, supra.
Decision will be entered for respondent. Footnotes
1. 8 months - January 1-August 31, 1956.↩
1. N. Y. Stock Corp. Law, sec. 69 (Supp., 1961) Consideration for issue of stock, bonds and options No corporation shall issue either shares of stock or bonds, except for money, labor done or property actually received for the use and lawful purposes of such corporation. Subject to any provisions in respect thereof set forth in its certificate of incorporation or other certificate filed pursuant to law, a stock corporation, other than a moneyed corporation, may issue options for the purchase of any of its authorized shares of stock, issued or unissued, for such consideration, value or benefit and upon such terms and conditions as may be fixed by the board of directors, subject to the requirements of this section and section twelve. No shares of stock having par value shall be issued for money in an amount less than the par value of such shares. Any corporation may purchase any property authorized by its certificate of incorporation, or necessary for the use and lawful purposes of such corporation, and may issue stock to the amount of the value thereof in payment therefor, and the stock so issued shall be full paid stock and not liable to any further call, neither shall the holder thereof be liable for any further payment under any of the provisions of this chapter; and in all statements and reports of the corporation by law required to be published or filed, this stock shall not be stated or reported as being issued for cash paid to the corporation, but shall be reported as issued for property purchased. For the purpose of determining whether shares of stock of any corporation are full paid and not liable to any further call no deduction shall be made, in computing the amount of consideration received by such corporation for such shares, for such reasonable compensation or discount in the sale, underwriting, or purchase of such shares by underwriters or dealers or others performing similar services as may be paid or allowed by the corporation. In the absence of fraud in the transaction, the judgment of the board of directors shall be conclusive as to the value of property or services received by the corporation for shares of its stock and the adequacy and sufficiency thereof and as to the consideration, value or benefit, tangible or intangible, received or to be received by the corporation for the issuance of options for the purchase from the corporation of shares of its stock and the adequacy and sufficiency thereof.↩
2. All Code references are to the Internal Revenue Code of 1954. SEC. 355. DISTRIBUTION OF STOCK AND SECURITIES OF A CONTROLLED CORPORATION. (a) Effect on Distributees. - (1) General rule. - If - (A) a corporation (referred to in this section as the "distributing corporation") - (i) distributes to a shareholder, with respect to its stock, or (ii) distributes to a security holder, in exchange for its securities, solely stock or securities of a corporation (referred to in this section as "controlled corporation") which it controls immediately before the distribution. (B) the transaction was not used principally as a device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation or both (but the mere fact that subsequent to the distribution stock or securities in one of more of such corporations are sold or exchanged by all or some of the distributees (other than pursuant to an arrangement negotiated or agreed upon prior to such distribution) shall not be construed to mean that the transaction was used principally as such a device), (C) the requirements of subsection (b) (relating to active businesses) are satisfied, and * * *
(b) Requirements as to Active Business. - (1) In general. - Subsection (a) shall apply only if either - (A) the distributing corporation, and the controlled corporation (or, if stock of more than one controlled corporation is distributed, each of such corporations), is engaged immediately after the distribution in the active conduct of a trade, or business, or (B) immediately before the distribution, the distributing corporation had no assets other than stock or securities in the controlled corporation and each of the controlled corporations is engaged immediately after the distribution in the active conduct of a trade or business. (2) Definition. - For purposes of paragraph (1), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if - (A) it is engaged in the active conduct of a trade or business, or substantially all of its assets consist of stock and securities of a corporation controlled by it (immediately after the distribution) which is so engaged. (B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution,↩