*Decision will be entered under Rule 50.*

ANDREW M. SPHEERIS AND ISMENE A. SPHEERIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7183–65.     Filed June 23, 1970.

*Maurice Weinstein,* for petitioners.
*Robert M. Burns,* for respondent.

OPINION

The primary question presented is whether the exchange by the petitioner of his stock of the company for stock of Anmarcon con-

stituted a nontaxable exchange under section 355 of the Internal Revenue Code of 1954.[2]

The respondent does not question that the transaction meets all the requirements of section 355, except the requirement that immediately after the distribution each corporation be engaged in the active conduct of a trade or business which has been actively conducted throughout the 5-year period ending on the date of the distribution. He further concedes that the company had been engaged in the active conduct of the trade or business of operating rental properties since 1945, and that it continued to be so engaged immediately after the distribution of the Anmarcon stock to the petitioner. However, he contends that Anmarcon was not, immediately after the distribution, engaged in the active conduct of a trade or business. He points out that from the date of distribution, August 15, 1962, until June 1964, the only

---

[2] Sec. 355 of the Code provides in part as follows:

SEC. 355. DISTRIBUTION OF STOCK AND SECURITIES OF A CONTROLLED CORPORATION.

(a) Effect on Distributees.—

(1) GENERAL RULE.—If—

(A) a corporation (referred to in this section as the "distributing corporation")—

(i) distributes to a shareholder, with respect to its stock, or

(ii) distributes to a security holder, in exchange for its securities,

solely stock or securities of a corporation (referred to in this section as "controlled corporation") which it controls immediately before the distribution,

(B) the transaction was not used principally as a device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation or both * * *

(C) the requirements of subsection (b) (relating to active businesses) are satisfied, and

(D) as part of the distribution, the distributing corporation distributes—

(i) all of the stock and securities in the controlled corporation held by it immediately before the distribution, * * *

\*       \*       \*       \*       \*       \*       \*

then no gain or less shall be recognized to (and no amount shall be includible in the income of) such shareholder or security holder on the receipt of such stock or securities.

(2) NON PRO RATA DISTRIBUTIONS, ETC.—Paragraph (1) shall be applied without regard to the following:

(A) whether or not the distribution is pro rata with respect to all of the shareholders of the distributing corporation,

(B) whether or not the shareholder surrenders stock in the distributing corporation, * * *

\*       \*       \*       \*       \*       \*       \*

(b) REQUIREMENT AS TO ACTIVE BUSINESS.—

(1) IN GENERAL.—Subsection (a) shall apply only if either—

(A) the distributing corporation, and the controlled corporation (or, if stock of more than one controlled corporation is distributed, each of such corporations), is engaged immediately after the distribution in the active conduct of a trade or business, * * *

\*       \*       \*       \*       \*       \*       \*

(2) DEFINITION.—For purposes of paragraph (1), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if—

(A) it is engaged in the active conduct of a trade or business, or substantially all of its assets consist of stock and securities of a corporation controlled by it (immediately after the distribution) which is so engaged,

(B) such trade or business has been actively conducted throughout the 5-year period ending on the date of the distribution,

asset which Anmarcon owned (other than an account receivable due from the petitioner) was the Wells Street property consisting of real estate upon which stood only the shell of a building which had burned down on February 14, 1960; that such property at the time of acquisition by Anmarcon was not producing any income; and that it was not until June 1964 when the Wells Street property was exchanged for three commercial buildings that Anmarcon owned any income-producing property. It is his contention that the Wells Street property was held by Anmarcon with the intention of selling it to the redevelopment authority of the City of Milwaukee, that the only activities engaged in on behalf of Anmarcon were activities by petitioner relating to the potential investment of proceeds from such a sale, and that these activities cannot be considered as constituting the active conduct of a trade or business within the meaning of the statute and the regulations thereunder.[3]

The petitioner, on the other hand, contends that the Wells Street property was a part of the rental business actively carried on by the company from 1945 until the time of its transfer to Anmarcon; that the company had collected rents therefrom until it was gutted by fire in 1960; that thereafter the company continued to hold the property with the intention of rehabilitating it; that the only reason such property was transferred to Anmarcon was because of the dispute between the petitioner who controlled 50 percent of the stock and the other stockholders controlling 50 percent of the stock; that Anmarcon was organized for the purpose of acquiring the property and erecting thereon an appropriate building from which rental income would be derived

---

[3] Sec. 1.355-1, Income Tax Regs., provides in part as follows :

(c) *Active business.*—Section 355 is not applicable unless the controlled corporation and the distributing corporation are each engaged in the active conduct of a trade or business. For specific rules in this connection see section 355(b) (1) and (2). Without regard to such rules, for purposes of section 355, a trade or business consists of a specific existing group of activities being carried on for the purpose of earning income or profit from only such group of activities, and the activities included in such group must include every operation which forms a part of, or a step in, the process of earning income or profit from such group. Such group of activities ordinarily must include the collection of income and the payment of expenses. It does not include—

(1) The holding for investment purposes of stock, securities, land or other property, including casual sales thereof (whether or not the proceeds of such sales are reinvested).

\* \* \* \* \* \* \*

(3) A group of activities which, while a part of a business operated for profit, are not themselves independently producing income even though such activities would produce income with the addition of other activities or with large increases in activities previously incidental or insubstantial.

(d) The following examples illustrate the application of the rules described in paragraph (c) of this section :

\* \* \* \* \* \* \*

*Example* (6). Corporation F owns and rents an office building and owns vacant land. It proposes to transfer the vacant land to a new corporation and distribute the stock of such new corporation to its shareholders. The holding of the vacant land does not constitute a trade or business.

(and not to hold an inactive parcel of real estate for investment or speculative purposes) ; that from the moment Anmarcon acquired the property, petitioner, as president and owner of 90 percent of the stock, carried on activities directed toward the accomplishment of this purpose; and that therefore Anmarcon was engaged in the active conduct of a trade or business immediately following distribution of its stock to the petitioner, within the meaning of the statute.

It is now well established that the division of a single business may satisfy the requirements as to active business under section 355(b) and therefore qualify under the tax-free provisions of section 355. *Edmund P. Coady*, 33 T.C. 771, affd. (C.A. 6) 289 F. 2d 490; and *United States v. Marett*, (C.A. 5) 325 F. 2d 28.

However, whether a transaction constitutes the division of a single business or the separation of two distinct businesses, section 355(b) requires that after the separation each entity be engaged in the active conduct of a trade or business. In the *Coady* case, we stated in part:

In order to insure that a tax-free separation will involve the separation only of those assets attributable to the carrying on of an active trade or business, and further to prevent the tax-free division of an active corporation into active and inactive entities, (b)(1) *further provides that each of the surviving corporations must be engaged in the active conduct of a trade or business.*

\*      \*      \*      \*      \*      \*      \*

As long as the trade or business which has been divided has been actively conducted for 5 years preceding the distribution, *and the resulting businesses* (each of which in this case, happens to be half of the original whole) are actively conducted after the division, we are of the opinion that the active business requirements of the statute have been complied with.

[Emphasis supplied.]

In the instant case, after the building situated on the Wells Street property was destroyed by fire and its tenants were forced to vacate, the petitioner engaged in numerous activities, first on behalf of the company and then on behalf of Anmarcon, which were directed toward ultimately returning the property to an income-producing status. We do not, therefore, think the Wells Street property was abandoned as a business asset by the company prior to August 14, 1962, the date upon which such property was transferred to Anmarcon, nor do we think the record supports the view that the property was thereafter held by Anmarcon for investment purposes. It seems clear, therefore, that the transfer of the Wells Street property to Anmarcon and the distribution of Anmarcon's stock to petitioner and Samster in exchange for their stock of the company did not result in the separation of a corporation's business and investment assets.

This, however, does not establish that what was transferred by the company to Anmarcon constituted a business (either as the result of

the division of a single business operated by the company or as the result of the separation of two or more distinct businesses operated by the company), and that Anmarcon was engaged in the active conduct of a trade or business immediately after the distribution. Section 355(b) requires not only that the assets involved in a corporate separation be business assets, but that the assets so separated, together with the activities in connection therewith, constitute operating businesses immediately after such separation. In this respect section 1.355–1(c) of the Income Tax Regulations provides that "a trade or business consists of a specific existing group of activities being carried on for the purpose of earning income or profit from only such group of activities." We think such regulation constitutes a reasonable interpretation of the statute and reflects the congressional intent.[4]

The Wells Street building was completely gutted by fire in February 1960 and its tenants forced to vacate. Thereafter, the company had appraisals made to ascertain the costs necessary to restore the property to income-producing status. Shortly after the fire, the company learned that the City was considering the redevelopment of the area in which the Wells Street property was located. Under the proposed redevelopment procedures the City would purchase the property in the redevelopment area and resell such property to the highest bidder who presented the most favorable redevelopment project, and it was the understanding that the City would try to favor the former owners of such property when it was resold. In view of the pending redevelopment program, it appeared unwise to attempt to rehabilitate the property at that time and the company was so advised by the City. The petitioner investigated projects for which the Wells Street property might be utilized under the pending redevelopment program, including the construction of a downtown motor hotel or office building. It was apparent that the size of the Wells Street property was inadequate for the projects contemplated by petitioner. He, therefore, sought to

---

[4] See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 50–51. See also H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A123–124, under sec. 353(c) of the earlier House bill which related to inactive corporations and contained provisions substantially similar to the provisions as to active business proposed by the Senate and subsequently incorporated in sec. 355(b) of the Code. Therein it was provided in part as follows:

Subsection (c) of section 353 defines the term "inactive corporation" for the purpose of section 353. As defined, such term means any corporation, unless for a 5-year period the conditions set forth in paragraphs (1), (2), and (3) are met, or unless the corporation qualifies for the exception set forth in the remaining portion of subsection (c).

Paragraph (1) of subsection (c) requires that the business of the corporation must have been held directly or indirectly by the distributing corporation (referred to in subsection (a)) for (or subsequent to the distribution by the corporation the stock of which was distributed) for such 5-year period. Thus, the transfer to a newly created subsidiary of a portion of its business and the distribution of such stock of such subsidiary to the shareholders of the parent corporation would not qualify under paragraph (1) *unless such assets constitute an operating business* held by the distributor for 5 years preceding the distribution or, if the business was not so held, unless the subsidiary corporation was held by the distributees for a period which, when aggregated with the period the business was held by the distributor, equals 5 years. [Emphasis supplied.]

acquire sufficient adjoining property on behalf of the company, or in conjunction with others, to assure the success of such a project.

Thus, sometime in 1960, the prospects were that the Wells Street property would be taken over by the City and that to return it to an income-producing status would entail a further investment in additional land and the formulation of a proposal for redevelopment which would meet the approval of the redevelopment authority and permit the repurchase of the land from the redevelopment authority for such purpose. Half of the stockholders were unwilling to have the company incur any additional indebtedness. Rather, they had contemplated restoring the property to its former state. Therefore, to resolve this disagreement, the Wells Street property was transferred by the company to Anmarcon and Anmarcon's stock distributed to petitioner and Samster in exchange for their stock of the company. Thereafter, the petitioner continued his endeavors on behalf of Anmarcon. Finally, after the proposed redevelopment program was abandoned by the City, and after the petitioner had become convinced that it was impossible for Anmarcon to continue with the project, Anmarcon exchanged the Wells Street property for three commercial rental properties.

It is our opinion that, although the Wells Street property remained a business asset subsequent to the fire in February 1960, the activities carried on thereafter in connection with such property were not sufficient to constitute the conduct of an operating business. Such activities consisted in large part of the petitioner's endeavors to utilize the Wells Street property in the development of a downtown motor hotel or office building. These projects would have required the acquisition of additional adjacent property and were contingent upon the City's plans for redeveloping the area in which the property was located. Such activities, in themselves, would not result in income or profit. Rather, such activities were, at most, no more than preliminary to actually engaging in a business.

We realize that the reason the Wells Street property was not restored to income-producing property was largely because of the uncertainty created by the proposed redevelopment program of the City. Nevertheless, whatever the reason, the fact remains that such property and the activities in regard thereto did not constitute the active conduct of a trade or business. We, of course, are governed by the specific provisions of the statute. As stated in *Commissioner* v. *Gordon*, 391 U.S. 83, "the requirements of the section [sec. 355] are detailed and specific, and must be applied with precision."

It is our conclusion that Anmarcon was not engaged in the active conduct of a trade or business immediately following the distribution of its stock to petitioner in exchange for his stock of the company, and that, therefore, the petitioner is not entitled, under section 355, to nonrecognition of gain.

1364

We turn, then, to the issue presented with regard to the amount of gain realized by the petitioner on the exchange. The respondent's determination is presumed to be correct and the petitioner has the burden of proving it to be wrong. *Welch* v. *Helvering*, 290 U.S. 111.

In the notice of deficiency, the respondent determined that the petitioner realized a long-term capital gain in the amount of $148,498.36 on the exchange. In reaching this determination, the respondent apparently determined that the basis of the petitioner's stock of the company was $500 and that the value of the Anmarcon stock received was $148,998.36, represented by $130,000 as the value of the Wells Street property and $18,998.36 as the value of the account receivable owed Anmarcon by petitioner. The respondent's determination, in effect, treated the petitioner as owning 500 shares of the company's stock prior to the exchange and all (500 shares) of Anmarcon's stock thereafter. This was corrected at the trial by stipulation of the parties to reflect Samster's ownership of 50 shares of the company's stock prior to the exchange and 50 shares of Anmarcon's stock thereafter.

At the trial the petitioner did not prove error in the respondent's determinations with respect to the value of the Anmarcon stock or the basis of petitioner's stock of the company. Indeed, it is our opinion, and we have so found as a fact, that the fair market value of the Anmarcon stock was $148,998.36 at the time of the exchange. On brief the petitioner requests no findings and presents no argument with regard to this issue. However, the respondent, on brief, concedes that the petitioner's gain on the exchange of his stock of the company for stock of Anmarcon should be reduced to $133,648.52 to reflect the petitioner's ownership of only 450 shares of the company's stock prior to the exchange and 450 shares of Anmarcon's stock thereafter.

In view of the above, it is our conclusion that the petitioner realized a long-term capital gain in the amount of $133,648.52 in his taxable year 1962 on the exchange of his stock of the company for stock of Anmarcon.

*Decision will be entered under Rule 50.*