Andrew M. SPHEERIS and Ismene Spheeris, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 71-1114.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1972.

Decided May 3, 1972.

Richard R. Teschner, Milwaukee, Wis. Charles S. Quarles, Ross R. Kinney, Milwaukee, Wis., for petitioners-appellants; Quarles, Herriott, Clemons, Teschner & Noelke, Milwaukee, Wis, of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Donald H. Olson, Atty., Tax Div., Dept. of Justice, Washington, D. C., Meyer Rothwacks, Thomas L. Stapleton, Attys., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before KNOCH, Senior Circuit Judge, SPRECHER, Circuit Judge, and GRANT, District Judge.*

KNOCH, Senior Circuit Judge.

The petitioners-appellants, Andrew M. Spheeris and Ismene A. Spheeris, his wife, who is a party only because she and her husband filed joint federal income tax returns for the years here involved, appeal from a decision of the Tax Court 54 T.C. 1353, adverse to the petitioners-appellants. As used below "petitioner" refers to Andrew M. Spheeris.

This cause arose out of the following described situation. In 1945 the Spheeris Realty Company was formed to own and manage rental property including a parcel, called the Wells Street property in downtown Milwaukee, Wisconsin. The father of petitioner owned 50% of the stock of the Realty Company. The rest of the stock was owned by the family of petitioner's uncle.

By 1960, petitioner owned 45% of the stock. Peter Samster had acquired 5% from petitioner. The rest was still owned by the family of petitioner's uncle.

The Wells Street property was improved by a 2-story commercial building which was leased to small businesses,

---

* Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

principally to a wholesale tobacco business: Spheeris Brothers Merchandising, owned by the uncle's family, which used a large part of the building as a warehouse.

On February 14, 1960, the building was substantially damaged by fire and the tenants forced to vacate. The Realty Company continued to receive rent from its two other properties but the Wells Street property stood idle.

There was a sharp division of opinion among the shareholders concerning future use of the building. The uncle's family wished to restore the building for continued use as warehousing for the wholesale tobacco business. Petitioner firmly opposed that as contrary to the best economic use of the site. He favored acquisition of adjacent property or joint venture to construct an office building or motor hotel on combined properties. He had heard that an urban renewal project was under consideration for this area and that, while former owners would be given favorable consideration under a plan for acquisition by the City and resale for the most advantageous use to the City's renewal aims, there was no assurance that former own-

ers would be the successful bidders. In October 1961, petitioner was told new construction pending completion of these renewal plans would be inadvisable. He also knew he would have to acquire additional adjacent property or combine with other owners to maintain a successful bid. There were also problems with respect to financing.

On August 15, 1962, petitioner and Peter Samster exchanged their 50% of the stock in the Realty Company for 100% of the stock in a newly formed corporation Anmarcon, Inc., to which the Realty Company transferred the Wells Street property and a receivable due from petitioner. The Wells Street property continued to stand idle. No bookkeeping records were kept. No lease or construction agreement was made.

In September, 1963, the redevelopment plan having been abandoned, the City officially notified petitioner to raze or rebuild the damaged structure. No permit for either operation was sought.

Petitioner regarded the exchange of stock as non-taxable under § 355 of the Internal Revenue Code of 1954 and accordingly reported no gain in his 1962 federal joint income tax return.[1]

---

1. *Sec. 355. Distribution of stock and securities of a controlled corporation.*

(a) *Effect on distributees.—*

(1) *General rule.—If—*

(A) a corporation (referred to in this section as the "distributing corporation")
—

(i) distributes to a shareholder, with respect to its stock, or

(ii) distributes to a security holder, in exchange for its securities,

solely stock or securities of a corporation (referred to in this section as "controlled corporation") which it controls immediately before the distribution,

(B) the transaction was not used principally as a device for the distribution of the earnings and profits of the distributing corporation or the controlled corporation or both * * *

(C) the requirements of subsection (b) (relating to active businesses) are satisfied, and

(D) as part of the distribution, the distributing corporation distributes—

(i) all of the stock and securities in the controlled corporation held by it immediately before the distribution, * * *
then no gain or loss shall be recognized to (and no amount shall be includible in the income of) such shareholder or security holder on the receipt of such stock or securities.

(2) *Non pro rata distributions, etc.—* Paragraph (1) shall be applied without regard to the following:

(A) whether or not the distribution is pro rata with respect to all of the shareholders of the distributing corporation,

(B) whether or not the shareholder surrenders stock in the distributing corporation * * *.

(b) *Requirements as to active business.* —

(1) *In general.—*Subsection (a) shall apply only if either—

(A) the distributing corporation, and the controlled corporation (or, if stock of more than one controlled corporation is distributed, each of such corporations), is engaged immediately after the distribu-

■ The Commissioner contended that the strict requirements of § 355(b) had not been met in that the business, the stock of which had been distributed, was not engaged in the active conduct of a trade or business, both immediately after distribution and for the 5-year period immediately preceding distribution. Even assuming that there had been activity for the 5-year preceeding period, the Tax Court concluded, and we agree, that holding a fire-damaged, non-income-producing property did not constitute the active conduct of a trade or business within the scope of § 355(b).

Petitioner argues that he was far from idle but his activities appear to be investigative and promotional in nature, consisting in the main of exploring new business opportunities. He did not cooperate with the other Realty Company stockholders in restoring the property to its former activity and even tried to enjoin the City's efforts to have the property reactivated. There was never an actual plan to reactivate the property during the four years after the fire by either the Realty Company or Anmarcon.

The Commissioner asserted that a gain was realized in the 1962 exchange of Realty Company stock for Anmarcon stock, no part of which qualified for nonrecognition as petitioner contends.[2] To meet the specific provisions of § 355; a qualifying corporate division must result in two or more separate businesses which are actively conducted during the required period.

Petitioner relies largely on cases involving the term "trade or business"

with reference to distinctions between personal and business expenses or business and investment aspects rather than the term "active conduct of a business" with which we are here concerned. See Elliott v. Commissioner of Internal Revenue 1959, 32 T.C. 283, 290; Boettger v. Commissioner of Internal Revenue 1968, 51 T.C. 324, 331; Commissioner of Internal Revenue v. Gordon, 1968, 391 U.S. 83, 93, 88 S.Ct. 1517, 20 L.Ed.2d 448.

When we consider the nature of petitioner's activities after the fire, we find that an estimate of the cost of rebuilding was made but no rebuilding started, as the uncle's family wished. On the contrary, petitioner was engaging in a search for ventures which would be new and more profitable than the old rental business. We find no agreement on a plan of action prior to the 1962 exchange. Petitioner hoped to build a motor hotel or office structure, while most of the other shareholders wanted only to rebuild the 2-story structure. They never authorized petitioner's activities in any other direction. Petitioner argues that he was engaging in the same type of business, that of renting property to tenants, but that unfortunately his efforts to expand the business failed. It is his view that he is being penalized for lack of success rather than for lack of activity.

The fact remains that when petitioner received Anmarcon stock in full payment for his surrender of his Realty Company stock, the transaction fell within the scope of §§ 302 and 317.[3]

---

tion in the active conduct of a trade or business, * * *

(2) *Definition.*—For purposes of paragraph (1), a corporation shall be treated as engaged in the active conduct of a trade or business if and only if—

(A) it is engaged in the active conduct of a trade or business, or substantially all of its assets consist of stock and securities of a corporation controlled by it (immediately after the distribution) which is so engaged,

(B) such trade or business has been actively conducted throughout the 5-year

period ending on the date of the distribution, * * * *

2. The Tax Court found that petitioner realized a long-term capital gain in the amount of $133,648.52 in his taxable year 1962.

3. *Sec. 302. Distributions in redemption of stock.*

(a) *General rule.*—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a

The previous rental business at the Wells Street location was discontinued, unlike the fresh fruit marketing association considered in Rev.Rul. 57–126, 1957–1 Cum.Bull. 123, on which petitioner relies, where the supply of fruit was almost wiped out by natural disasters in 1949 and 1951 and the existing physical plant, formerly used only in the fruit business, was largely used for a cotton pressing operation, while the fruit business was relatively dormant for five years. Yet the separate identity of the fresh fruit division was maintained and constituted the active conduct of a business during these lean years, and full scale operation was later resumed, at which time the cotton pressing business was transferred to a new corporation in exchange for its stock which was distributed to the members of the association. There was no question of discontinuing the fruit business, but only of adding other operations to use the facilities made available by the temporary shortage of fruit.

Petitioner points to the Tax Court's finding that a major factor was the uncertainty created by the proposed (and later abandoned) redevelopment program of the City. Nevertheless during the ensuing two years after the exchange of stock, petitioner, as indicated, failed to apply for a building permit and sought a restraining order when served with notice by the City to raze or rebuild the damaged property. Whatever the economic and financial reasons, the fire-damaged building remained in the same condition until it was exchanged for three other parcels of rental property more than four years after the fire.

The Tax Court found, as indicated, that Anmarcon had no receipts or disbursements and maintained no formal books until June 1964. Petitioner argues that failure to set up books is not conclusive, but he also states that during this period none were required.

■ Petitioner argues that the purpose of the statute is to deter taxpayers from utilizing corporate reorganizations as a means of tax avoidance rather than accomplishment of legitimate business purposes, by transforming corporate earnings normally taxable as ordinary income into earnings qualified for capital gains treatment, and that in this case the ultimate purpose of the legislation would be frustrated if the Commissioner's interpretation of § 355's post-distribution active business requirement is adopted.

Petitioner stresses the fact that Anmarcon never liquidated to its shareholders the business assets for which the Wells Street property was ultimately exchanged and that there was no danger of tax avoidance.

■ This Court is not free to disregard requirements specifically set out in the statute on the theory that those requirements are unsuited to achieve the Congressional purpose in a particular case. Commissioner of Internal Revenue v. Gordon, supra, 391 U.S. 93, 88 S.Ct. 1517. The decision of the Tax Court is affirmed.

Affirmed.

---

distribution in part or full payment in exchange for the stock.

  (b) *Redemptions treated as exchanges.*

—

\* \* \* \* \*

  (3) *Termination of shareholder's interest.*—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

\* \* \* \* \*

*Sec. 317. Other definitions.*

  (a) *Property.*—For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (of rights to acquire such stock).

  (b) *Redemption of stock.*—For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.